36871. NEWPORT TIMBER CORPORATION et al. v. FLOYD.

GREGORY, Justice.

Appellants (defendants below) appeal from the grant of an interlocutory injunction and denial of their motion to dismiss. Bobbie Jean Floyd, appellee, filed a verified equitable complaint

against appellants Newport Timber Corporation (hereinafter Newport) and Billy Thomas in the Superior Court of Pierce County on May 12, 1980. The complaint alleged that Ms. Floyd had sold to Newport all merchantable pine timber on a tract of land in Pierce County which she owned, by written contract dated November 16, 1977, under the terms of which Newport was given two years from the contract date to cut and remove its timber; that the time for removal had expired but Newport was threatening to re-enter and renew the cutting and removal of the timber by and through Thomas, a timber harvester, and Newport's agent; and that she would suffer irreparable damage from such action. The complaint prayed for a temporary and permanent injunction to restrain the defendants from entering her land and cutting and removing the timber therefrom and that the contract be cancelled and terminated. Attached to the complaint was the timber contract of which paragraphs 3 and 18 are pertinent to this case:

"3. Grantee shall have the full term of two years from and after the date of this contract within which to cut and remove the trees and timber herein conveyed and to have, exercise and enjoy all the singular and other property rights, privileges, easements and powers herein granted, unless otherwise extended as hereinafter provided."

"18. Should weather conditions be such as to prevent ' practical timber harvesting operations' hereunder (after timber harvesting operations have once commenced hereunder) then this contract shall be extended by the number of days equal to the number of days of 'impractical timber harvesting operations'. Grantee shall have the uncontrolled and absolute right to determine when, as and if weather conditions are such as to prevent 'practical timber harvesting operations' hereunder. Grantee shall notify Grantor in writing when it deems weather conditions to be such as to permit 'practical timber harvesting operations' hereunder and Grantee shall also notify Grantor in writing when it deems weather conditions are such as to permit 'practical timber harvesting operations' hereunder. The term of this contract, as a matter of contract between the parties, shall be extended automatically by the total number of days during which timber harvesting operations are suspended hereunder because of weather conditions which prevent 'practical timber harvesting operations' (without the payment of any additional consideration)."

The hearing on the interlocutory injunction was heard June 2, 1980, before defensive pleadings were filed.

Appellee testified at the hearing. It was shown by her testimony, by the introduction of certain documents, and by stipulation that Newport had sent four letters to Mrs. Floyd by certified mail, which

she received.

The first letter, dated August 8, 1979, informed Mrs. Floyd that weather conditions were such as to prevent "practical timber harvesting operations" and that cutting was suspended as of August 6, 1979. The second letter, dated November 11, 1979, informed her that weather conditions now permitted cutting and that harvesting had re-commenced on November 9, 1979. The second letter also stated that pursuant to paragraph 18 of the timber conveyance, the contract had been extended 95 days. The third letter, dated December 10, 1979, stated that harvesting was suspended due to weather conditions as of December 7, 1979. The fourth letter, dated May 7, 1980, informed Mrs. Floyd that weather conditions now permitted harvesting and that harvesting operations were re-commenced on May 7, 1980, and that the contract had been extended an additional 152 days to July 20, 1980.

George Kaufman, a forester employed by Newport, was called by appellee, and testified on cross-examination that appellant Thomas was one of two dealers employed by Newport to cut timber; that he had been the person who had cut timber on appellee's land in 1979 for Newport; that Thomas would have been the person who would act as agent for Newport to cut the timber on appellee's property if cutting had been re-commenced; that the fourth letter indicated an intention to re-commence cutting but that cutting had not yet re-commenced.

After appellee rested, appellants made an oral motion to dismiss on two grounds: first, because the complaint did not state a claim or cause of action, and secondly, because venue did not lie in Pierce County. Appellant's motion was ostensibly based both on the pleadings and the evidence. The trial court denied the motion(s),[1] and then orally indicated that he was going to grant the interlocutory injunction (a temporary restraining order had previously been issued).

On June 10, 1980, appellants filed a written motion to dismiss, grounded on lack of venue,[2] and an answer. The trial court filed a

---

[1] We note that Code Ann. § 81A-112 (d) provides for a hearing on motions raising defenses enumerated in § 81A-112 (b), presumably affording both parties with an opportunity to present evidence and responsive argument. See *Taylor v. Malden Trust Co.,* 129 Ga. App. 330, 331-332 (199 SE2d 553) (1973). In this case, neither party requested an opportunity to present additional evidence to that already presented, nor was any objection made to the court considering matters outside the pleadings, either at the hearing or on appeal.

[2] The effect of this motion, not ruled on, is not before us. Appellants' oral motion to dismiss, made during a hearing before his answer was filed, effectively presented the matter to the trial court. Code Ann. § 81A-107 (b) (1).

formal written order granting a temporary injunction, with findings of fact and conclusions of law on August 8, 1980.

(1) Appellants contend that the case should have been dismissed because there was no evidence before the trial court that either Newport Timber Corporation or Thomas had committed any overt act warranting injunctive relief. They argue that a bare threat of injury to property offers no basis for equitable relief by injunction, citing *Insurance Center v. Hamilton,* 218 Ga. 597 (129 SE2d 801) (1963) and *West v. Chastain,* 186 Ga. 667 (198 SE 736) (1938).

However, while it is well settled that a mere apprehension of injury will not justify equitable relief, this does not mean that one is barred from seeking such relief until after the injury is inflicted. *Head v. Browning,* 215 Ga. 263, 269 (4) (109 SE2d 798) (1959); *Maddox v. Threatt,* 225 Ga. 730, 731 (2) (171 SE2d 284) (1969).

In this case, appellee was notified by Newport of the latter's intention to resume cutting on her property. This resumption was based on a purported extension of a contract under authority of which timber had previously been cut by Newport's agents. Under the circumstances of this case, appellee had more than a bare fear of injury and her claim was not premature. *Ellis v. Ga. Kraft Co.,* 219 Ga. 335 (133 SE2d 350) (1963).[3]

(2) Appellants contend that the case should have been dismissed because venue was improper. It was alleged in the complaint that Thomas was a resident of Pierce County and that Newport was a resident of Liberty County. It is conceded by appellee that venue would not lie in Pierce County if Newport were the only defendant. "Equity cases shall be tried in the county where a defendant resides against whom substantial relief is prayed." Art. VI, Sec. XIV, Par. III, Constitution of 1976 (Code Ann. § 2-4303). Appellee contends that Thomas is a defendant against whom substantial relief is prayed.

However, " [t]he mere fact of praying for an injunction against a defendant does not in all events confer the right to file the equitable petition in the county of his residence, or to draw to that county residents of other counties." *Fowler v. Southern Airlines,* 192 Ga. 845, 851 (5) (16 SE2d 897) (1941). Where substantial relief is sought only against the non-resident defendant, the suit is subject to dismissal for want of jurisdiction. *Youmans v. Steele,* 217 Ga. 747 (1) (125 SE2d

---

[3] Whether it was sufficiently shown that the injury would have been irreparable in damages or that there existed other circumstances justifying equitable relief is not an issue on appeal. See Code Ann. § 55-104. However, we note that "The cutting and removal of timber from forest lands is a destructive trespass, and one liable in its nature to cause irreparable damage to the owner of the timber". *McRae v. Smith,* 164 Ga. 23 (5) (137 SE 390) (1927).

215) (1962). "The essential fact necessary to confer jurisdiction is, not that a defendant residing in the county has a substantial interest in the litigation, but whether or not substantial [equitable] relief is prayed against such defendant." *Planters Cotton Oil Co. v. McCurley,* 199 Ga. 104, 106 (1) (33 SE2d 270) (1945).

"Each case must be determined on its particular allegations, and must be decided on the nature, extent, and kind of equitable relief sought and the relationship between the parties to the action." *First National Bank v. Holderness,* 189 Ga. 819, 822 (2) (7 SE2d 682) (1940).

In this case, appellee sought to enjoin the cutting of timber which, according to her pleadings and the evidence presented at the hearing on the interlocutory injunction, although initiated by a decision on the part of Newport, would actually have been carried out by Thomas. A similar factual situation was considered in *Baker v. Davis,* 127 Ga. 649 (57 SE 62) (1906). In *Baker,* plaintiffs filed an equitable petition in Coffee County seeking to enjoin timber cutting on his property. The defendants were a Glynn County corporation and three employees of the corporation residing in Coffee County, who were actually doing the cutting. The court held that the employees were substantial defendants and venue lay in Coffee County. The court noted that one who unlawfully cuts timber is a trespasser even if he cuts under the direction of another and held that where equitable relief was otherwise appropriate, it could be granted against such an employee. That in *Baker* the cutting had already commenced and here it has not, does not require a different result, nor does *Carter v. Grogan,* 230 Ga. 249 (196 SE2d 434) (1973). While we noted in *Carter* that the threatened wrong had not yet occurred, at p. 253, it is clear that the decision was premised on the resident agent's complete lack of any participation in the decision complained of (bringing Lockheed F-100's to Dobbins Air Force Base), his lack of discretion in the performance of his duties, and his lack of control over the operation of the planes after their arrival at Dobbins.

Appellee in this case is seeking to prevent the unlawful cutting of her timber. The pleadings and the evidence presented thus far support her contention that Thomas is a substantial defendant.

The court below properly denied appellants' motion to dismiss for lack of venue.

(3) Appellants contend that the interlocutory injunction should have been denied because the uncontroverted evidence before the trial court showed that appellants had a right under Paragraph 18 of the timber conveyance to go upon the lands of appellee to harvest timber.

We first note that Paragraph 3 of the conveyance gave Newport

two years to cut and remove the timber conveyed. A conveyance of timber which includes a limitation of time for the cutting and removal thereof conveys a title in the timber defeasible as to timber not removed within the stated period. After the time provided has elapsed, title to the remaining timber revests in the grantor. *A. C. Alexander Lumber Co. v. Bagley,* 184 Ga. 352, 360-361 (191 SE 446) (1937). It is undisputed in this case that the proposed re-commencement of cutting did not fall within the two-year period, so if that period was not extended, further cutting by Newport or its agents would constitute a trespass. Newport's right to cut now depends upon whether or not the two-year period was extended.[4]

It is fundamental contract law that consideration is essential to a contract which the law will enforce. Code Ann. § 20-301. For the right to harvest timber for two years, Newport paid $40,000. No additional monies were to be paid by Newport for a Paragraph 18 extension. The parties could very well anticipate weather conditions which would make harvesting impractical, and make provision for such in their contract,[5] including an extension of time equivalent to the number of days of such weather. Weather would thus be a factor taken into consideration by both parties at the inception of the agreement and a factor considered in arriving at an agreed upon consideration.

Paragraph 18 reflects the parties' contemplation of possible delays caused by the weather. Since bad weather could as a practical matter prevent Newport from actually having its full contracted-for two years to cut its timber, the parties agreed that the two-year period would be automatically extended, without the payment of any additional consideration, by the number of days that bad weather prevented "practical timber harvesting operations."

Paragraph 18 also included a provision that "Grantee shall have the *uncontrolled and absolute discretion* to determine when, as, and if weather conditions are such as to prevent 'practical timber harvesting operations' hereunder." (Emphasis supplied.) If this sentence were to be interpreted to give Newport the power to extend the term of the conveyance regardless of weather conditions, such unilateral right to extend without payment of additional

---

[4] Newport only claimed an extension until July 20, 1980 pursuant to Paragraph 18 of the contract and that time, of course, has now passed. But if in fact the contract was extended until July 20, 1980, Newport is now protected by Paragraph 19 which further extends the contract by the length of time any restraining order or injunction is in effect.

[5] There is another paragraph in the timber conveyance which provides for an extension in case of a delay in the cutting of timber caused by acts of God. Newport does not rely on this paragraph. See *Felder v. Oldham,* 199 Ga. 820, 825 (35 SE2d 497) (1945).

consideration would in our opinion, be unenforceable for lack of consideration. See Code Ann. § 20-302. We feel that it may be fairly implied from Paragraph 18 as a whole that the discretion given to Newport was to be exercised in a sound and honest manner and in good faith, as otherwise the references to weather conditions and practical timber harvesting would be rendered meaningless. Cf. Wood v. Lucy, 222 N.Y. 88 (118 NE 214) (1917); Furrer v. International Health Assurance Co., 256 Or. 429 (1970); Bonner v. Westbound Records, Inc., 76 Ill. App. 3rd 736 (1979); *Hatfield v. Teachers Inc. &c. Assn.,* 146 Ga. App. 642, 647 (2) (247 SE2d 161) (1978). Whether or not the discretion given to Newport was exercised in good faith is a question of fact.

Appellants contend that there was before the trial court unrebutted evidence, in the form of the letters sent to appellee by Newport, that weather conditions were such as to prevent practical timber harvesting for a total of 247 days (95 days plus 152 days). The trial court, however, properly declined to consider the contents of the letters as evidence of the weather conditions. As to that issue, the letters were merely hearsay.[6]

Appellants proved a contract, and proved written notices of extension pursuant to the contract. Appellee alleged in her verified petition that the contract had expired. She showed that Newport did not attempt to cut and remove any timber under the contract until the third week in February, 1979, some 14 months after the commencement of the contract; that cutting ceased in the middle of March, 1979; that no other cutting occurred after March of 1979; and that from March, 1979 to May 7, 1980, Newport claimed 247 days of bad weather.

We conclude that the evidence supported the trial court's grant of a temporary injunction.

*Judgment affirmed. All the Justices concur.*

DECIDED APRIL 29, 1981.

*Jones, Osteen & Jones, J. Noel Osteen,* for appellants.
*Leon A. Wilson II, Carroll Russell,* for appellee.

---

[6] Being properly authenticated, they were admissible to show that written notice was given and that Newport had threatened to begin cutting. For those purposes, the value of the letters did not depend upon the credibility of the out of court asserter, the author of the letters. See Code Ann. § 38-301; McCormick on Evidence (2nd Ed. 1972) Ch. 24, § 246.