A94A0004. AVERY et al. v. COLONIAL PIPELINE COMPANY et al.
(444 SE2d 363)

BEASLEY, Presiding Judge.

Like the plaintiff in *Jakobsen v. Colonial Pipeline Co.*, 260 Ga. 565 (397 SE2d 435) (1990), plaintiffs, Avery and others, seek to prevent Colonial Pipeline Company and Plantation Pipeline Company from removing trees, vegetation, and overhang from petroleum pipeline easements which traverse real properties owned by plaintiffs in DeKalb and Fulton Counties. They also seek declaratory judgment, to quiet title, and monetary damages. The trial court granted partial summary judgment in favor of defendants, ruling that they can remove trees, vegetation, and overhang; it reserved the question of damages.

Defendants are engaged in the interstate transport of refined petroleum products by the use of pipelines. Plaintiffs' predecessors-in-title granted easements to Plantation and to Southeastern Pipeline Company (Colonial's predecessor-in-interest) for the purpose of constructing and maintaining the pipelines. Plantation's original right-of-way varies in width from thirty to sixty feet and contains three buried pipelines with diameters of twenty-six inches, ten inches, and fourteen inches. Colonial's original right-of-way is fifteen feet in width and contains a buried eight-inch line.

These four pipelines transport, on average, more than fifteen million gallons of ignitable refined petroleum each day under high pressure. Ignitable refined petroleum is a hazardous liquid regulated by the United States Department of Transportation's Office of Pipeline Safety under the Hazardous Liquid Pipeline Safety Act, enacted in 1979. 49 USC § 2001 et seq. Pipeline safety regulations issued by the DOT are codified at 49 CFR Part 195.

Since grant of the pipeline easements in the 1940's, there has

been virtually no effort to keep any easements clear of naturally growing or intentionally planted vegetation, including trees. However, subsequently enacted federal pipeline safety regulations incorporate inspection and maintenance standards requiring pipeline rights-of-way to be maintained so as to have "clear visibility and to give reasonable access to maintenance crews." See 49 CFR § 195.3. Each operating company is required to maintain a periodic pipeline patrol program to observe: surface conditions on and adjacent to the pipeline right-of-way, indication of leaks, construction activity other than that performed by the company, and any other factors affecting the safety and operation of the pipeline. Other factors, as shown by defendants, are insuring against pipeline encroachments and preventing tree roots from damaging underground pipes in a manner sufficient to cause corrosion.

In 1989, representatives of the Office of Pipeline Safety conducted safety inspections of defendants' pipeline facilities in DeKalb and Fulton Counties. Defendants were notified by certified letter that they had committed probable violations of the federal regulation requiring each operator to inspect surface conditions on or adjacent to each pipeline right-of-way at least 26 times each year. 49 CFR § 195.412 (a). The areas referred to in the letter include plaintiffs' properties. The letter stated that the right-of-way was overgrown with large trees and bushes which obscured it to the extent that aerial patrolling was ineffective in determining the surface conditions on or adjacent to the pipeline right-of-way. The letter also stated that failure to correct the circumstances leading to the probable violations would result in enforcement action. See 49 USC § 2007.

As a result, defendants advised plaintiffs that they intended to enter upon the easements and adjacent property for the purpose of "tree cutting and side trimming." This involves cutting trees and obscuring vegetation growing within the easements and side-cutting overhanging tree limbs and shrubbery to keep the right-of-way clearly visible and to afford ready access to pipeline crews.

Plaintiffs filed the present complaint to enjoin Colonial and Plantation. They answered the complaint and filed requests by way of counterclaims and joint motion to enjoin plaintiffs from preventing defendants from the planned activities. After the court consolidated the interlocutory injunction hearing with trial on the merits, defendants filed a joint motion for summary judgment. It was granted in part: the court authorized defendants to cut trees and vegetation in the easements and to side-cut tree limbs and bushes which overhang the easements without interference from plaintiffs.

1. Plaintiffs contend that they are entitled to a jury determination of the issue of what is reasonably necessary with regard to removal of vegetation from these easements.

In opposition to defendants' motion for summary judgment, plaintiffs presented expert affidavit testimony that aerial inspection of pipeline easements does not in fact facilitate the detection of leaks and encroachments, that tree roots do not in fact damage pipelines, and that removal of trees and vegetation from easement surfaces in order to engage in pipeline maintenance operations is not in fact necessary.[1]

Plaintiffs thus argue that they have raised material issues of fact as to whether it is reasonably necessary for defendants to tree-cut and side-trim for the purposes sought, primarily aerial inspection. They argue that under *Jakobsen*, supra, these are jury questions. Both of these arguments fail.

It appears without contradiction from the record that federal regulatory authorities found defendants in probable violation of a pipeline safety regulation and threatened enforcement action if they did not correct the problem of the overgrown rights-of-way. Defendants have an "implied right" under the easements to take the action required of them by federal regulatory laws. *Natural Gas Pipeline Co. of America v. Cox*, 490 FSupp. 452, 454 (5) (E.D. Ark. 1980).

In *Jakobsen*, supra, the trial court found that it would be virtually impossible for defendants to inspect surface conditions of their pipeline easements in compliance with federal regulations through ground inspection rather than aerial patrol. The court concluded that under their easements, Colonial and Plantation have the implied right to cut trees and shrubbery on their easements and to side-cut tree limbs and shrubbery which overhang the easements. Accordingly, the court granted an interlocutory injunction in favor of Colonial and Plantation.

On appeal, Jakobsen challenged that part of the order granting defendants the right to side-trim trees overhanging the easements. A four-to-three majority of the Supreme Court confirmed the trial court's conclusion that the easements impliedly include the right to side-trim trees so that Colonial and Plantation might aerially inspect the pipelines to determine whether they are in need of maintenance, repair, or are otherwise a public hazard. 260 Ga. at 566 (2). The Court noted that the easements expressly give defendants the right to " 'cut timber' " and to " 'do whatever may be requisite for the enjoyment of the rights' " contained in the easements.[2] Id. at 565-566.

---

[1] Defendants argue that this responsive material was not timely under USCR 6.2, but that rule does not apply to opposing affidavits served by the adverse party prior to the day of a summary judgment hearing. *Winchester v. Sun Valley-Atlanta Assoc.*, 206 Ga. App. 140 (1) (424 SE2d 85) (1992).

[2] It did not construe the trial court's order to authorize the removal of trees growing outside the easement area, but only "the trimming of the portions of the trees extending over the easement area."

Consequently, in keeping with the majority opinion in *Jakobsen*, defendants are entitled, as a matter of law, to remove trees and vegetation from the easements in order to aerially inspect the pipelines and access them.[3] Plaintiffs' arguments to the contrary find support only in *Jakobsen's* dissent.

2. Plaintiffs contend that the trial court improperly relied on the letter from the Office of Pipeline Safety, in that it was inadmissible hearsay.

The letter was not admissible to show that defendants committed probable violations of the pipeline safety regulation. As to that fact, the letter was hearsay. *Newport Timber Corp. v. Floyd*, 247 Ga. 535, 541 (3) (277 SE2d 646) (1981). However, the letter was admissible to show that defendants had received a warning from federal regulators advising that enforcement action would be taken should they not correct objectionable circumstances. For those purposes, the value of the letter did not depend upon the credibility of the out-of-court author of the letter. Id. at 541, n. 6. "Where evidence is offered 'to establish the fact that something was said, not the veracity of its content, (it) is admissible to explain conduct and ascertain motives, not as hearsay, but as original evidence.' [Cit.]" *MARTA v. Allen*, 188 Ga. App. 902, 905 (2) (374 SE2d 761) (1988); OCGA § 24-3-2.

3. Plaintiffs' final contention is that the court erred in authorizing the entirely unrestricted removal of vegetation from the easements regardless of need.

The order authorizes defendants to remove trees, vegetation, and overhang from the easements without interference from plaintiffs.[4]

---

[3] In its 1994 session, the Georgia General Assembly enacted legislation recognizing that "[t]he . . . construction and operation of petroleum pipelines create significant impacts on land, including . . . the permanent and continued clearing of the pipeline path necessary for aerial surveillance, thereby eliminating the possibility of many types of land use on such property, including the growth of trees; and restrictions on other land development on or along the pipeline path that may be inconsistent with the pipeline's operation and safety. . . ." OCGA § 22-3-70 (3).

Because petroleum pipelines adversely impact Georgia land in this way and others, the 1994 legislation temporarily suspends the eminent domain rights of petroleum pipeline companies in order to permit a Petroleum Pipeline Study Committee to complete a report and make recommendations to the General Assembly concerning the need for land use controls or restrictions related to petroleum pipelines. See OCGA §§ 22-3-70 (13), (14); 22-3-71; 22-3-72; 22-3-80 (d), (e), (f).

[4] Nonetheless, under most of the easements, the pipeline companies agreed "to pay any damages to crops, fences and timber, which may arise from laying, maintaining, operating or removing such pipe lines." As previously stated, the trial court denied defendants' motion for summary judgment on the issue of damages.

Under the above-quoted provisions in the easements, the pipeline companies also agreed "to bury pipe lines so that they will not interfere with the cultivation of the land." However, the words "cultivated land" apply to land used to grow crops, *Cowart v. State*, 62 Ga. App. 559, 560 (8 SE2d 729) (1940), and it does not appear that crops are being grown on plaintiffs' properties.

While the order does not specify the extent of authorized removal, it does not authorize removal regardless of need. We have held in Division 1 that defendants have a legal right to remove trees, vegetation, and overhang which interferes with aerial inspection of the easements. In compliance with federal regulatory law, defendants also have a legal right to remove trees and vegetation from easement surfaces so as to give reasonable access to maintenance crews. *Cox,* supra. Defendants have not sought authorization to remove vegetation except as necessary for these purposes, and we do not interpret the order appealed as providing any more extensive authorization than that sought.

*Judgment affirmed. Andrews and Johnson, JJ., concur.*

DECIDED MAY 10, 1994 —
RECONSIDERATION DENIED MAY 31, 1994 — 

*Bedford, Kirschner & Venker, Andrew R. Kirschner,* for appellants.

*Fellows, Johnson, Davis & LaBriola, Henry D. Fellows, Jr., Arnold & Hopkins, Ross Arnold, Gary L. Glancz, Edward T. Floyd,* for appellees.