S13A0137. PIKE COUNTY et al. v. CALLAWAY-INGRAM.

(742 SE2d 471)

HINES, Justice.

This is an appeal by defendants Pike County, its county manager, and members of its board of commissioners (collectively "County") from the Superior Court of Pike County's grant of summary judgment to plaintiff Marcia Callaway-Ingram ("Callaway-Ingram"), who was appointed Chief Magistrate of Pike County. Callaway-Ingram filed suit seeking, inter alia, a writ of mandamus and permanent injunction in this dispute involving her salary and the funding and operation of the magistrate court. For the reasons that follow, we affirm the judgment of the superior court.

The relevant facts as found by the superior court are the following. In April 2010, Priscilla Killingsworth resigned the position of Chief Magistrate of Pike County in the middle of her 2009-2012 elected term of office. Callaway-Ingram was appointed to fill the position on May 25, 2010, and assumed her judicial duties on June 1, 2010. During the 2009-2012 term of this elected position, Killingsworth was paid an annual salary of $63,139, and that remained the budgeted salary for that office when Callaway-Ingram assumed it on June 1, 2010. Inasmuch as the compensation for Georgia magistrate judges is set by statute, and Callaway-Ingram was going to fill an unexpired term of office, salary was not discussed during the appointment process. However, because Callaway-Ingram needed time to wind up her private law practice before devoting full-time efforts to the position of chief magistrate, she and the chairman of the board of

commissioners agreed to a temporary reduction of her annual salary to $49,182 in exchange for her being allowed time off on a flexible basis to close her practice. Once that had been concluded, she would devote full time to the chief magistrate position and receive the same salary as her predecessor. During this time period, the County found itself in a financial crisis, and on June 29, 2010, 28 days after Callaway-Ingram assumed her judicial duties, the County adopted its budget for the 2010-2011 fiscal year, and, over Callaway-Ingram's objection, permanently reduced the chief magistrate's salary from $63,139 to $49,182. A year later, the County, over Callaway-Ingram's objection, budgeted $49,182 for her salary.

During Killingsworth's term as chief magistrate, she had the assistance of a full-time associate magistrate, Loretta Rakestraw, who was appointed by Killingsworth at the start of the 2009-2012 term of office at an annual salary of $56,826. The County re-approved that salary for the full-time associate magistrate for the 2009-2010 fiscal year, after Callaway-Ingram assumed her duties as chief magistrate, which created the situation in which the associate magistrate was paid approximately $7,000 more per year than the chief magistrate. However, for the 2010-2011 fiscal year, the County made the associate magistrate position only half-time with a corresponding reduction in salary to $23,108. The Board, over Callaway-Ingram's objection, maintained the associate magistrate's position as half-time in its 2011-2012 budget. No operational analysis was done to determine the proper level of staffing required for functioning of the magistrate court.

Because of a failure to report for work, in September 2010, Callaway-Ingram suspended Rakestraw without pay. A lawsuit between Rakestraw and the County related to the suspension was settled in November 2011. Pursuant to the settlement, Rakestraw was reinstated to the position of associate magistrate with a part-time status, but was given full-time benefits until the expiration of her appointment on December 31, 2012. As part of the settlement, Rakestraw was also given $20,000 which was paid from the magistrate court's personnel budget. Callaway-Ingram was not meaningfully consulted in regard to the settlement even though her responsibilities as chief magistrate included budget oversight. Callaway-Ingram again objected to the reduction of the associate magistrate's position to half-time. The parties' settlement was adopted by the superior court in the form of a consent order. In July 2011, Callaway-Ingram attempted to fill a civil clerk position, but the County was responsible for withholding from her at least two of the applications that had been submitted for the position. The County repeatedly refused to provide her with staff and funds deemed necessary for operation of the magistrate court.

Callaway-Ingram filed suit seeking, inter alia, a writ of mandamus requiring the County to pay her the full salary as set at the beginning of the 2009-2012 term, as it had prior to her appointment, and to employ a full-time associate magistrate; a permanent injunction enjoining the County from interfering with the effective operation of the magistrate court, by, among other things, preventing job applications from reaching her; and back pay with interest and attorney fees. Callaway-Ingram and the County filed cross-motions for summary judgment. The superior court entered summary judgment in favor of Callaway-Ingram on all claims and denied the County's motion for summary judgment.

The County challenges numerous aspects of the superior court's grant of summary judgment to Callaway-Ingram and contends that it should have been granted summary judgment with respect to the claims that it illegally reduced Callaway-Ingram's salary and the position of associate magistrate from full-time to part-time. Further, it takes issue with the grant of permanent injunctive relief and the award of attorney fees to Callaway-Ingram.

1. The 1983 Georgia Constitution, Art. VI, Sec. VII, Par. V provides in relevant part that "[a]n incumbent's salary, allowance, or supplement shall not be decreased during the incumbent's term of office." And, as noted, the salary for magistrates is set by statute. See OCGA § 15-10-23. Furthermore, there are statutory prohibitions against decreasing such compensation. Indeed, OCGA § 15-10-23 (d) states:

> The county governing authority may supplement the minimum annual salary of the chief or other magistrate in such amount as it may fix from time to time, *but no such magistrate's compensation or supplement shall be decreased during any term of office.* Nothing contained in this subsection shall prohibit the General Assembly by local law from supplementing the annual salary of any magistrates.

(Emphasis supplied.) Thus, at issue is whether Callaway-Ingram was an "incumbent" during the relevant time period, and key is the meaning of the phrase "term of office" as used in the constitutional and statutory provisions.

An "incumbent" is an individual who is in possession of the office at issue and is qualified as a matter of law to exercise the powers and perform the duties pertaining to that office; the status of "incumbent" is not affected by the method by which the individual attained the position. *Lee v. Peach County Bd. of Commrs.*, 269 Ga. 380, 381 (497 SE2d 562) (1998). In this case, there is evidence to support the

superior court's factual findings regarding Callaway-Ingram's assumption of the position of chief magistrate, including that there was only a temporary and short-term agreed-to reduction of hours and compensation prior to Callaway-Ingram's assumption of full-time work as chief magistrate. The found circumstances demonstrate that Callaway-Ingram had been performing the duties of chief magistrate before the County took formal action to reduce the salary for that position, and therefore, that she was at that time an incumbent in office. Id.

As for the question of whether the County violated the prohibition against decreasing the magistrate's salary during the "term of office," the County contends that when a salary is established for a particular judge, that salary is guaranteed only for that particular judge for the duration of the term at issue; that if the chief magistrate is replaced during that term, the replacement does not inherit as a matter of law the salary previously set for the position; that it had the authority to lower the chief magistrate's salary while the office was vacant; and that the phrase "term of office" is "expansive enough to contemplate numerous individuals having separate and distinct terms of office during the same statutory four-year period." But, the County's arguments are unavailing. This Court has plainly stated that a "term of office" is the "statutorily-set, definite extent of time an elective office may be held." *Lee v. Peach County Bd. of Commrs.*, 269 Ga. at 381. And, the logic behind such a construction is sound. To conclude otherwise as the County urges, that "term of office" for the purpose of compensation is limited to the actual time each individual holds the office, could, as Callaway-Ingram asserts, lead to unsound results. A county authority would be placed in the position of effectively being able to terminate the appointed magistrate by making compensation a matter of uncertainty or so reducing it as to render the position financially non-viable for the appointee.

The County violated both the constitutional and statutory mandates in reducing Callaway-Ingram's salary during the unexpired term which she was serving. Accordingly, a writ of mandamus was available to recover the salary due her. *Lee v. Peach County Bd. of Commrs.*, 269 Ga. at 381-382.

2. The County contends that the superior court erred in holding illegal the reduction of the associate magistrate's position from full-time to part-time because the court had previously approved the reduction in the lawsuit between the County and Rakestraw, and inasmuch as the present order was not issued during the same term as the consent order in that litigation, the superior court effectively allowed Callaway-Ingram to impermissibly collaterally attack the prior consent order. The Rakestraw consent order makes plain that

Callaway-Ingram voiced multiple objections in regard to the settlement, including the reduction of the position of associate magistrate to part-time; but, as the superior court determined, the Rakestraw litigation did not, and could not, conclude the claims of Callaway-Ingram, because she was not a party to that case. The theory of collateral estoppel cannot apply because it addresses the re-litigation of an issue that has been adjudicated on the merits in another action involving the same parties or their privies. *In re T. M. G.*, 275 Ga. 543, 544 (570 SE2d 327) (2002). Nor does the doctrine of res judicata bar Callaway-Ingram's claim because it too requires an identity of parties as well as an identity of causes of action. *Odom v. Odom*, 291 Ga. 811, 812-813 (1) (733 SE2d 741) (2012).

3. The County, citing *Ellis v. Georgia Kraft Co.*, 219 Ga. 335, 337 (133 SE2d 350) (1963), urges that the superior court erred in granting an injunction against it as to the operation and staffing of the magistrate court because Callaway-Ingram never established injury or a "reasonable fear of future acts" in that regard including that job applications would be withheld in the future. Relying upon *Morris v. Mullis*, 264 Ga. App. 428, 440 (590 SE2d 823) (2003), the County argues that in order to meet the "reasonable fear of future acts" requirement, Callaway-Ingram had to show that there was "notice" that the County "intended to resume some offending conduct," and that she could not do so as there were no impending job openings or staffing issues in the magistrate court with which the County could interfere.

But, the cited language from the Court of Appeals in *Morris v. Mullis* is based upon this Court's decision in *Newport Timber Corp. v. Floyd*, 247 Ga. 535 (277 SE2d 646) (1981), which explains that while the mere apprehension of injury does not justify equitable relief, this does not mean that one is barred from seeking the equitable relief until after the anticipated injury has occurred. Id. at 538 (1). In addition to the evidence of the County's withholding the applications for a needed position in the magistrate court, there was evidence that the County failed to budget funds and staff for the magistrate court which were necessary for the proper functioning of that court. And, as the trial court expressly found, the budget crisis affected the magistrate court far more adversely than certain county departments. Further, the county manager admitted that the magistrate court was the only entity that received less money for its 12-month budget, and this was done without an operational assessment of need. Thus, there was evidence portending future acts which would affect the operation and staffing of the magistrate court.

4. The County maintains that even if Callaway-Ingram was entitled to permanent injunctive relief for a claim actually presented,

the superior court erred in granting an injunction that lacked the specifics necessary to be enforceable, in that it merely ruled that the County could not engage in "future interference." But, the superior court found that Callaway-Ingram was entitled to specific relief; such relief included that the County not be permitted to continue with the salary and position reductions at issue and that it not be allowed to interfere with Callaway-Ingram's ability to interview and hire personnel. The statutory requirements in OCGA § 9-11-65 (d)[1] do not mandate that the injunction be so detailed as to cover every possible development, but only that it contain "reasonable" detail. *Bearden v. Ga. Power Co.*, 262 Ga. App. 550, 553 (3) (586 SE2d 10) (2003). Here, the rights of Callaway-Ingram with regard to her position in and the functioning of the magistrate court are sufficiently established and described by the ruling of the superior court so as to allow for enforcement of the injunction.

5. Finally, the County cannot prevail in its assertion that the superior court erred by awarding attorney fees to Callaway-Ingram inasmuch as it is premised upon the contention that it was entitled to summary judgment in its favor with respect to all of Callaway-Ingram's claims, and this Court has determined that that is not the case. See *Jennings v. McIntosh County Bd. of Commrs.*, 276 Ga. 842, 847 (5) (583 SE2d 839) (2003); *Gwinnett County v. Yates*, 265 Ga. 504, 508 (2) (458 SE2d 791) (1995).

*Judgment affirmed. All the Justices concur.*

DECIDED APRIL 29, 2013.

*O'Quinn & Cronin, Donald A. Cronin, Jr.*, for appellant.
*Parks, Chesin & Walbert, Allan L. Parks, Jr., Jennifer K. Coalson*, for appellee.

---

[1] OCGA § 9-11-65 (d) provides:
   *Form and scope of injunction or restraining order.* Every order granting an injunction and every restraining order shall be specific in terms; shall describe in reasonable detail, and not by reference to the complaint or other document, the act or acts sought to be restrained; and is binding only upon the parties to the action, their officers, agents, servants, employees, and attorneys, and upon those persons in active concert or participation with them who receive notice of the order by personal service or otherwise.