**FIRST DIVISION
DOYLE, C. J.,
ANDREWS, P. J., and RAY, J.**

**NOTICE: Motions for reconsideration must be
*physically received* in our clerk's office within ten
days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules**

**June 9, 2016**

# In the Court of Appeals of Georgia

A16A0404. PERRY GOLF COURSE DEVELOPMENT, LLC v. DO-015
    COLUMBIA RESIDENTIAL, LLC.

DOYLE, Chief Judge.

In a business dispute, plaintiff Perry Golf Course Development, LLC ("Perry Golf"), appeals from the confirmation of an arbitration award in favor of defendant Columbia Residential, LLC ("Columbia"). Perry Golf contends that the superior court erred by compelling arbitration and confirming the award because (1) the arbitration provision enforced by the trial court was part of an agreement already deemed unenforceable as to another party, and (2) the parties had abandoned the agreement that contained the arbitration provision. For the reasons that follow, we affirm.

"Because the question of whether a valid and enforceable arbitration agreement exists represents a question of law, we review de novo a trial court's order granting or denying a motion to compel arbitration."[1]

The relevant factual history is undisputed. In the mid 1990's, the Atlanta Housing Authority ("AHA") sought to redevelop the Perry Homes public housing development. Perry Golf, Columbia, and Brock Built, LLC, formed an entity, Perry Homes Redevelopment, LLC ("PHR"), to bid on the redevelopment project, and PHR ultimately was awarded the contract by the AHA. In 2001, PHR executed a revitalization agreement with AHA that laid out a general plan for the redevelopment.

In 2002, the three members of PHR executed an operating agreement that governed each party's rights and obligations in furtherance of the redevelopment plan. The agreement outlined three main areas of obligations: development of a golf course by Perry Golf, development of multi-family housing by Columbia, and development of single-family housing by Brock Built. The agreement also contained

---

[1] (Puctuation omitted.) *AAA Restoration Co. v. Peek*, 333 Ga. App. 152 (775 SE2d 152) (2015).

2

a provision for dispute resolution allowing an aggrieved party to demand binding arbitration. That provision provides as follows, in relevant part:

> If any Dispute (as defined below) arises between the parties in relation to this Agreement . . . any party . . . may demand binding arbitration [after giving notice]. As used herein, "Dispute" shall include any difference, disagreement[,] or failure to agree between the parties arising out of or in connection with this Agreement or any of the Project Documents including any question regarding the application, existence, validity, performance, withdrawal from or non-performance, or termination of this Agreement or any clause contained within this Agreement or any Project Document or *any matter in any way connected with this Agreement or the rights, duties, or obligations of any party to this Agreement or any Project Document*. Each Member hereby agrees that any unresolved Disputes shall be settled by means of arbitration . . . . The Members also agree that any award resulting from such Arbitration shall be final and binding upon them, with each Member agreeing to waive its right to contest the arbitration award in a court of law. . . .[2]

After a dispute arose between Perry Golf and Brock Built, in May 2005, Perry Golf filed a demand for arbitration with Brock Built, which participated in the arbitration over its objection. The ensuing arbitration ("First Arbitration") ultimately

---

[2] (Emphasis supplied.)

3

resulted in a ruling from the arbitrator that the "arbitration agreement is binding and valid on the parties," but the project-related obligations in the operating agreement nevertheless were unenforceable as between Perry Golf and Brock Built based on the agreement's lack of mutuality between the two.

This result was not challenged by any of the parties. Going forward, the parties agreed that their mutual authority with respect to PHR would be governed by the Georgia Limited Liability Company Act,[3] even as they continued to perform the roles established by the original operating agreement to carry out the revitalization agreement between PHR and the AHA.

As the housing portions of the project moved forward, progress on the golf course languished, and in 2006, PHR and the AHA amended the revitalization agreement to eliminate the golf course feature of the project.[4] As a result, Perry Golf believed it had been unfairly cut out of the project and filed the instant suit against AHA, Brock Built, and Columbia. Enumerating various claims including breach of contract and breach of fiduciary duty, Perry Golf alleged that the two other members

---

[3] OCGA § 14-11-100 et seq.

[4] See *Perry Golf Course Dev. v. Housing Auth.*, 294 Ga. App. 387 (670 SE2d 171) (2008).

4

of PHR wrongfully voted (by two to one majority vote) to remove the golf course from the plan, and that AHA and PHR wrongfully amended the revitalization agreement. AHA moved for a judgment on the pleadings, Columbia answered and moved to compel arbitration, Brock Built counterclaimed and brought third party claims, and the trial court dismissed all claims against all parties.[5] That order was appealed to this Court, which affirmed in part and reversed in part the dismissal, allowing certain claims to proceed, including alleged breach of fiduciary duty by both Brock Built and Perry Golf.[6]

On remittur, Columbia renewed its motion to compel arbitration of Perry Golf's claims, and the trial court ordered the parties to binding arbitration. In 2015, the arbitrator entered an award favoring Columbia ("Second Arbitration"), and the trial court confirmed the award, giving rise to this appeal.

1. Perry Golf contends that the trial court erred by compelling arbitration because the operating agreement containing the arbitration clause was deemed to be unenforceable in the First Arbitration. Based on the scope of that proceeding, which did not include Columbia, we disagree.

---

[5] See id.

[6] See id. at 393 (6) (c), 394-395 (7) (a).

"Arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit. Therefore, the question of arbitrability, i.e., whether an agreement creates a duty for the parties to arbitrate the particular grievance, is undeniably an issue for judicial determination."[7] "And the validity of an arbitration agreement is generally governed by state law principles of contract formation."[8]

Here, the arbitration clause is found in the operating agreement, which was the subject of the First Arbitration between Perry Golf and Brock Built. Perry Golf argues that the operating agreement is unenforceable, relying on the fact that the First Arbitration resulted in a finding that the operating agreement was unenforceable due to the lack of mutuality between Perry Golf and Brock Built.

As a threshold matter, we note that the First Arbitration did not include Columbia, the appellee in this case. Accordingly, to the extent that Perry Golf makes a collateral estoppel argument, the First Arbitration's ruling does not bind Columbia

[7] (Punctuation omitted.) *Pickle v. Rayonier Forest Resources, L.P.*, 282 Ga. App. 295, 296 (638 SE2d 344) (2006).

[8] (Punctuation omitted.) *McKean v. GGNSC Atlanta, LLC*, 329 Ga. App. 507, 509 (1) (765 SE2d 681) (2014).

6

here because it was not a party to the First Arbitration, and its obligations under the operating agreement were not the same as Brock Built's.[9] Therefore, the First Arbitration lacks the identity of issues and parties to be binding on Columbia now.[10]

Next, with respect to the award itself, the arbitrator explicitly ruled that the arbitration clause encompassed the dispute at issue and was valid and binding, even though the arbitrator held that the operating agreement's larger project obligations between Perry Golf and Brock built were unenforceable (not void) due to the lack of mutuality. Therefore, the result of the First Arbitration was not that the arbitration clause itself was unenforceable – it was actually the opposite – nor did the First Arbitration hold that the operating agreement was entirely void. The First Arbitration merely addressed the enforceability of the substantive provisions of the operating agreement as between Perry Golf and Brock Built, and no ruling was made as to the enforceability of obligations as to the parties to this appeal.

---

[9] See *Pike County v. Callaway-Ingram*, 292 Ga. 828, 832 (2) (742 SE2d 471) (2013) ("The theory of collateral estoppel cannot apply because it addresses the re-litigation of an issue that has been adjudicated on the merits in another action involving the same parties or their privies."). We need not decide whether the arbitration was an adjudication on the merits for purposes of collateral estoppel.

[10] See id.

7

Finally, pretermitting the enforceability of the substantive obligations between Perry Golf and Columbia, we note that the operating agreement contained the following severability clause: "If any term or provision of this Agreement is held illegal, invalid or unenforceable, such illegality, invalidity, or unenforceability will not affect the legality, validity or enforceability of the remainder of this Agreement." "[W]here the agreement is founded on a legal consideration containing a promise to do several things or to refrain from doing several things, and only some of the promises are illegal, the promises which are not illegal will be held to be valid."[11] Giving effect to the unambiguous severability clause, we conclude the mutual promises among all parties to forego litigation in court (and avoid the associated expense and delay) are not dependent on the enforceability of other alleged promises in the operating agreement.[12] Accordingly, the First Arbitration award does not support Perry Golf's argument that the arbitration clause is unenforceable here.

---

[11] (Punctuation omitted.) *Harris v. SAL Financial Svcs.*, 270 Ga. App. 230, 232 (606 SE2d 293) (2004).

[12] Cf. *ISS Intl. Svc. System v. Widmer*, 264 Ga. App. 55, 61 (3) (589 SE2d 820) (2003) ("[W]here the agreement is founded on a legal consideration containing a promise to do several things or to refrain from doing several things, and only some of the promises are illegal, the promises which are not illegal will be held to be valid.").

8

2. Perry Golf next argues that the arbitration clause is unenforceable because the parties abandoned the operating agreement when they agreed to conduct themselves according to the Georgia Limited Liability Company Act. This argument is belied by the subsequent conduct of the parties and the broad scope of the arbitration clause.

It is undisputed that the parties to the agreement endeavored to continue their roles to honor the overall development process contemplated by the revitalization agreement between PHR and the AHA, which agreement was untouched by the First Arbitration. The arbitration clause applies to disputes in "any matter in any way connected with this Agreement or the rights, duties[,] or obligations of any party to this Agreement or any Project Document." The Project Documents include the operating agreement, the revitalization agreement executed between AHA and PHR, and "each other agreement and instrument contemplated [in the operating agreement] or entered into by" PHR in furtherance of the development project. The basis of the dispute was the amendment of the revitalization agreement between AHA and PHR by removing the golf course from the planned project. Thus, is clear that the subject matter of the dispute falls squarely within that contemplated by the arbitration clause.

Further, with respect to disputes arising after termination of the contract, the arbitration clause contains no limitation on the time frame of disputes that are subject to arbitration. Under OCGA § 9-9-3, "[a] written agreement to submit any existing controversy to arbitration or a provision in a written contract to submit *any controversy thereafter arising* to arbitration is enforceable . . . ."[13] The arbitration clause applies to disputes in "any matter in any way connected to" the project documents, including the revitalization agreement. This reflects an intent by the parties to arbitrate project issues broadly. "[I]n the absence of some contrary indication, there are strong reasons to conclude that the parties did not intend their arbitration duties to terminate automatically with the contract."[14] In interpreting similarly broad language, this Court has held that disputes arising from conduct after the termination of a contract can still be subject to an arbitration clause in the terminated contract. This was based on the fact that because the alleged wrongful conduct "touched" the contract, the contract's broadly worded arbitration clause was

---

[13] (Emphasis supplied.)

[14] *Nolde Bros. v. Bakery & Confectionery Workers Union*, 430 U.S. 243, 253 (3) (97 SCt 1067, 51 LE2d 300) (1977). See also *Pickle*, 282 Ga. App. at 297 (2) (b).

10

given effect even after termination of the contract.[15] Here, the underlying dispute arose from the amendment of the revitalization plan (a "Project Document" subject to the arbitration clause) and conduct that occurred both before and after the alleged termination of the operating agreement. The application of the broadly-worded arbitration clause to the subject matter of the operating agreement is consistent with the parties' continued pursuit of the project.[16] Under these circumstances, the trial court did not err by compelling arbitration and confirming the arbitrator's award.

*Judgment affirmed. Andrews, P. J. and Ray, J., concur.*

---

[15] See *Davidson v. A. G. Edwards & Sons, Inc.*, 324 Ga. App. 172, 174 (1) (b) (i) (748 SE2d 300) (2013), quoting *Brown v. Coleman Co.*, 220 F3d 1180, 1184 (III) (10th Cir. 2000). See also *Penso Holdings, Inc. v. Cleveland*, 324 Ga. App. 259, 263 (749 SE2d 821) (2013) ("A provision in a written contract to submit any controversy thereafter arising to arbitration is enforceable without regard to the justiciable character of the controversy and confers jurisdiction on the courts of the state to enforce it and to enter judgment on an award. As with any other contract, the parties' intentions control.") (footnote and punctuation omitted) (physical precedent only).

[16] Cf. *Pickle*, 282 Ga. App. at 297-298 (2) (b).