## AS TO THE VALIDITY OF A SEWER ASSESSMENT.

Court of Appeals for Lucas County.

CHARLES A. THATCHER v. THE CITY OF TOLEDO ET AL.

Decided, February 2, 1914.

*Sewer Assessments—Outlet of Sewer in Stream Which is Polluted Thereby—Does Not Render Assessment Invalid, When—Notice by Publication to Property Owners Sufficient—Section 3834, General Code, Constitutional.*

1. Where city authorities, acting under favor of the statutes providing for the construction of main or trunk sewers, have established the outlet of such sewer in a river or creek, injunction will not lie to prevent the collection of an assessment therefor on the ground that the sewer has no legal outlet, nor that it constitutes a nuisance, in the absence of a showing of fraud or gross abuse of discretion in establishing such outlet.

2. An assessment for the construction of a sewer will not be set aside on the ground that the state board of health has determined, after the sewer is built, to require the city to submit plans for abatement of the pollution of the stream into which the sewer empties; nor would the fact that the stream into which the sewer empties proves, ultimately, to be so polluted as to constitute a violation of the statutes prohibiting the pollution of streams by sewage justify the setting aside of such assessment.

3. Section 3834, General Code, does not violate any constitutional provision by dispensing with the requirement for personal notice to resident owners as a prerequisite to making an assessment on their property for the cost of constructing a main or district sewer, as no personal liability for the assessment attaches to the owners, and in such case a notice given by publication is sufficient.

*Charles A. Thatcher, in propria persona.*

*Wesley S. Thurstin, Jr.,* City Solicitor, and *Thos. L. Gifford,* contra.

RICHARDS, J.; CHITTENDEN, J., and DONNELLY, J., concur.

Heard on Appeal.

This action is brought for the purpose of enjoining the collection of an assessment against certain property in the city of Toledo owned by the plaintiff, Charles A. Thatcher, levied for

the construction of a main or trunk sewer. The sewer extends on Monroe street in a westerly direction from Bancroft street, emptying into Ottawa river or Ten Mile creek. The expenses of constructing this sewer amounted to slightly under $36,000 and the cost has been paid by the city to the contractor. The property belonging to the plaintiff is in the sewer district, but not abutting upon the street in which the sewer runs, and was assessed for the construction of the sewer in the sum of $467.82, which amount was payable in five annual installments.

The plaintiff, in his petition, sets forth numerous grounds on which he contends that the assessment made against his property is invalid, but on the trial of the case the serious claims made by him were limited to two; first, that the sewer in effect has no legal outlet and, emptying the sewage where it is emptied from this sewer, constitutes a nuisance; second, that no notice of the passage of the resolution and ordinance by the city council was served on him, although he was during all of the time a resident of the city of Toledo.

At the point where this sewer empties into Ottawa river or Ten Mile creek the distance to Maumee Bay is three miles or more, and the condition of the stream from this point where the sewer empties into it is described by witnesses who testified in the case. From that testimony it appears that during midsummer the stream has little current, is sluggish or stagnant, and is described by one witness as being dark or black in color and by another as being at times of a green color and having on the surface more or less scum. One witness states that he discovered no odor arising from the stream, but another witness, who lives in its immediate vicinity, states that "We once in while get a whiff of bad smell, call it anything you want to. The number of mosquitoes is what we notice the most." This offensive condition apparently exists only during a protracted dry season, when the water is very low, for it is evident that during a considerable portion of the year much water passes through the river or creek to the bay, although the fall is not great.

It is disclosed by the evidence that on October 29, 1903, the state board of health, by written communication, advised the

chief engineer of the city of Toledo that the plans for the sewer
districts, embracing the one now in question, were approved
upon the condition that if, in the opinion of the state board of
health, the outlet should become a nuisance and a menace to
the health of the community a purification plant should be in-
stalled, and it was only after this communication was received
by the city that legislation was adopted for the construction of
this main sewer.   This action was commenced in the common
pleas court in 1910.   On March 20, 1913, being several years
after the completion of the sewer and the payment of the ex-
penses therefor, the state board of health determined to require
the city to submit definite general plans for the abatement of
the pollution of Ten Mile creek.

It is provided in Section 3872 of the General Code that main
sewers shall have their outlet in a "river or other proper place."
It is apparent from all the evidence in this case that Ottawa
river or Ten Mile creek is not an ideal outlet into which to empty
a sewer, but the matter of determining where a sewer shall
empty is one which is within the control and discretion of the
city authorities, and the rule has long been settled that in the
absence of fraud or a gross abuse of discretion the action of those
authorities will not be interfered with by the courts.

Plaintiff cites *1 Page and Jones on Taxation by Assessment*,
Sections 329, 401, 417, 418 and 447.   An examination of these
sections tends to elucidate the questions involved in the case at
bar although the principles there discussed by the authors may
not be decisive as to this case.   It is stated in the first section
cited that a sewer without an outlet which can be used as of
right, is as useless a thing as can be imagined.   The statement,
of course, is a truism, but the evidence in this case fails to show
that this sewer is without an outlet.   The outlet, such as it is,
has met the approval of the city authorities, and in the absence
of a showing of either fraud or a gross abuse of discretion, we
are not called upon to interfere with the conclusion thus reached.
See *Johnson* v. *Village of Avondale*, 1 C. C., 229, and *Chamber-
lain* v. *City of Cleveland*, 34 Ohio St., 551, proposition 9 of the
syllabus.

In this connection we may call attention to the claim urged by plaintiff that the sewage flows through this stream over private property, and that the city has acquired no right from the abutting property owners to thus use the stream. It appears that when the sewer was first constructed it emptied into the Ottawa river at a point on the land owned by Alice M. Whitney and others, and that the circuit court, at the suit of the owners of the property, enjoined the use of the sewer for any purposes, except storm-water drainage, until the right to so empty the sewer should be acquired from the owners of the property at the outlet (*Whitney* v. *City of Toledo*, 8 C.C.[N.S.], 577). That right was subsequently acquired by appropriation proceedings, but no proceedings were taken against the riparian owners farther down the stream, and it does not appear that any contentions are being made by such owners in the courts that the sewer can not have its outlet in this stream.

As bearing very closely upon the matter now under consideration, we quote from *Johnson* v. *Village of Avondale, supra,* page 232, where the court, speaking of a sewer outlet, say:

"Whether it is a proper one, is, in my judgment, a matter as to which the law confers a discretion on the village authorities, and unless it has been grossly abused, the courts can not properly interfere. And I see no good reason as yet to think that such discretion has been abused. The evidence on this point is, to say the least, very conflicting. Nor do I think the fact that the right of the village to have the outlet at this point, is denied by the owner of the ground, is a good reason why the court should interfere as prayed for at the instance of the plaintiffs. They are not called upon to defend the rights of the owner. If the village infringes on them, he has his remedy; but if the fact that some person might have a claim against the village for flowing sewage upon, or near his lands, is to stop this work, it is probable that the sewer can never be built anywhere. The same claim might be made by the plaintiffs if it was continued and actually emptied into Mill Creek, or some other stream, for it might then be an invasion of the rights of some one as much as it is now."

A case nearly identical in some of its aspects with the case at bar is that of *Cleneay* v. *Norwood,* 137 Fed. Rep., 962, a case

which arose under the statutes of Ohio providing for the construction of sewers. It is urged by plaintiff that the position taken by the state board of health is such that the city is without authority to enforce the collection of an assessment because of the claimed unlawful pollution of this stream. In the seventh paragraph of the syllabus of the case just cited the court say:

"That a village, its officers and agents, had violated certain statutes prohibiting the pollution of streams by sewage, and were liable for the penalties prescribed therefor constituted no ground for setting aside an assessment for the construction of the sewers."

It is insisted, however, that the assessment is invalid because no notice was served upon the plaintiff of the passage of the preliminary resolution and of the ordinance to improve, and in this connection it is contended that such notice is required by the statutes, and if not so required, that the statutes authorizing the assessment are unconstitutional. The resolution and ordinance were duly published and no controversy exists on that point, but only that personal notice was not served on the plaintiff. A solution of the controversy necessitates an examination of the sections of the General Code providing for the making of improvements of this character and assessing the cost therefor. The sewer is a main or trunk sewer and it is provided in Section 3878, General Code, in substance, that the resolution providing for the construction of such sewer shall be published once a week for not less than two nor more than four consecutive weeks in a newspaper of general circulation. Section 3834, General Code, especially excepts main or district sewers from the class as to which notice of the passage of the resolution shall be personally given, as provided in Section 3818, General Code. We hold, therefore, that under the statutes as they read no personal notice was required to be served upon the plaintiff, notwithstanding he was a resident of the city of Toledo. See *Kohler Brick Co.* v. *City of Toledo,* 10 C.C.(N.S.), 137.

The inquiry then arises as to the validity of statutes authorizing an assessment upon the property of a resident without the service of notice on him personally. Plaintiff in his brief

cites and relies on *Anderson* v. *Messinger*, 158 Fed. Rep.. 250, and *Chicago & Erie Rd. Co.* v. *Keith et al*, 67 Ohio St., 279. A careful examination of these authorities does not lead us to the belief that they are controlling upon the question now under consideration. The case last cited arose under a statute requiring railroad companies to construct ditches of sufficient capacity to conduct to a proper outlet water which accumulated along the sides of the road-bed. The statute failed to provide for notice, either actual or constructive, to the railroad company so sought to be charged, and for that reason, among others, was held unconstitutional. The court speaking through Burket, C. J., say on page 291:

"The railroad company is notified by the owner or tenant to open the ditch, and is also notified by the probate judge to open it, but no notice is given to it of any hearing, and no provision whatever is made for a hearing at any stage of the proceeding."

It is perfectly manifest that the Constitution is invaded by a statute of that character. The statutes under which main sewers are constructed have provisions in them for the giving of notice by publication, as hereinbefore indicated, and they further have provisions whereby the owner of property assessed is notified by publication of the amount of the assessment upon his property, and has an opportunity to be heard as to the validity and justice thereof. See Sections 3847, 3895 and 3848, General Code.

A proceeding for the establishment of a main sewer is in effect a proceeding *in rem*, and it is not necessary to its validity that a person whose property is sought to be charged with a portion of the cost of the improvement and on whom no personal liability is fixed, should receive actual notice personally of the proceedings. So far as the question under consideration is concerned, the case is similar to *Cupp* v. *Commissioners of Seneca County*, 19 Ohio St., 173, which involved the construction of a county ditch. In that case it is said, on page 182, that the statute made no provision for the service of personal notice upon the land-owners. The court then proceeds:

"Nothing is better established as law, than that such rights may be affected, and lost to the owner, by a proceeding *in rem,* and upon merely constructive notice. The law of all such proceedings rests in the necessity of the case, and in no instance, perhaps, is that necessity more plainly apparent than in the construction of public roads, and other improvements of like nature. Without the aid of some such proceeding, the construction of roads and ditches would be next to impracticable."

The case has become a leading one in this state and has been many times cited with approval. One of the latest citations of that case is *Commissioners of Portage County* v. *Gates,* 83 Ohio St., 19, in which it is held that personal notice to the landowner of the proceeding is not indispensible to its legality.

The law on this subject is well stated in *1 Page and Jones on Taxation by Assessment,* Section 121, as follows:

"The Legislature has a wide discretion in determining the nature and kind of notice to be given, though it has no power to dispense with all notice. If such notice is given as will fairly and reasonably apprise the property owner of the pendency of the assessment proceedings so as to give him an opportunity for a hearing upon the merits he is not entitled as a matter of constitutional right to personal service. Notice by publication may therefore be provided for by the Legislature without violating the constitutional provision forbiding the taking of property without due process of law."

It is said further by the authors, in Section 127, that:

"Outside of the question of personal liability, personal notice is unnecessary and a reasonable notice given by publication is sufficient."

Finding that the statutes violate no constitutional provision, and that they have been followed in the proceedings leading up to the construction of the sewer in question and the assessment of plaintiff's land therefor, the petition will be dismissed and the injunction dissolved.

Petition dismissed and injunction dissolved.