**SECOND DIVISION**
**BARNES, P. J.,**
**BOGGS and RICKMAN, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**October 28, 2016**

# In the Court of Appeals of Georgia

A16A1990. EXTREMITY HEALTHCARE, INC. et al. v. ACCESS BA-073
   TO CARE AMERICA, LLC et al.

BARNES, Presiding Judge.

This case centers on a dispute between several businesses over the enforceability of an arbitration clause in a buyout agreement relating to a failed joint venture. Plaintiffs Extremity Healthcare, Inc. ("EHI"), Village Podiatry Group, LLC ("Village Podiatry"), and EHI Vascular Solutions – Marietta, LLC f/k/a Extremity ASC, LLC ("Vascular Solutions") appeal the trial court's order compelling arbitration of their claims against Defendants Access to Care America, LLC ("ATCA") and Sweet Dreams Nurse Anesthesia, Inc. ("Sweet Dreams") and dismissing the case. The plaintiffs contend that the trial court erred in compelling arbitration because the buyout agreement containing the arbitration clause was invalid and unenforceable due to lack of mutual assent and a mutual mistake. The plaintiffs also argue that the defendants waived enforcement of the arbitration clause based on their participation

in this litigation. For the reasons discussed below, we conclude that the trial court properly ordered the case to arbitration and therefore affirm.

> Arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit. Therefore, the question of arbitrability, i.e., whether an agreement creates a duty for the parties to arbitrate the particular grievance, is undeniably an issue for judicial determination.

(Punctuation and footnote omitted.) *Perry Golf Course Dev., LLC v. Columbia Residential, LLC*, 337 Ga. App. 525, 528 (1) (786 SE2d 565) (2016). See *Granite Rock Co. v. Intl. Brotherhood of Teamsters*, 561 U.S. 287, 296 (II) (130 SCt 2847, 177 LE2d 567) (2010); *Triad Health Mgmt. of Ga., III, LLC v. Johnson*, 298 Ga. App. 204, 206 (2) (679 SE2d 785) (2009); *Panhandle Fire Protection v. Batson Cook Co.*, 288 Ga. App. 194, 197-198 (1) (b) (653 SE2d 802) (2007).[1] On appeal from a trial court's order compelling arbitration, the standard of review is whether the court "was correct as a matter of law." *Simmons Family Properties, LLLP v. Shelton*, 307 Ga.

---

[1] There is an exception to the general rule that issues of contract formation are for resolution in court rather than before the arbitrator, namely, where there is "clear and unmistakable evidence that the parties agreed to arbitrate the issue of arbitrability." *Panhandle Fire Protection*, 288 Ga. App. at 197 (1) (b). See *Losey v. Prieto*, 320 Ga. App. 390, 393 (739 SE2d 834) (2013). But none of the parties have argued that the exception should apply here.

2

App. 361, 362 (1) (705 SE2d 258) (2010). And "[t]he construction of an arbitration agreement, like any other contract, presents a question of law, which is subject to de novo review." Id. Mindful of these principles, we turn to the record here.

*The Joint Venture.* The record reflects that Village Podiatry is a wholly owned subsidiary of EHI. In 2012, Village Podiatry, a practice group of podiatrists, and Sweet Dreams, a practice group of nurse anaesthetists, entered into a joint venture to establish a podiatric ambulatory surgery center. To that end, Sweet Dreams formed another legal entity, ATCA, and on October 1, 2012, ATCA secured a five-year lease with the landlord of an office building in Marietta, Georgia, where the parties intended to construct their surgery center. The parties also formed Vascular Solutions, a limited liability company in which Village Podiatry and ATCA would be members, through which the parties would operate their joint venture at the office building.

*The Buyout Agreement.* The parties' joint venture did not operate smoothly, and they ultimately decided to end their business relationship. In 2015, after lengthy negotiations, the parties executed a document entitled "Release and Settlement/Buyout Agreement" (the "Buyout Agreement" or "Agreement") under which EHI, Village Podiatry, and Vascular Solutions (collectively, the "EHI Parties") agreed to buy out the joint venture interests of Sweet Dreams and ATCA

3

(collectively, the "SDNA Parties"), and the parties agreed to release one another from all claims related to the joint venture.

More specifically, under the Buyout Agreement, in return for a cash payment totaling over $800,000 from the EHI Parties paid out over a 5-year term, the SDNA Parties agreed to take several steps to withdraw from the joint venture, including having ATCA relinquish its membership interest in the parties' joint venture company, Vascular Solutions. ATCA also executed a "Lease Assignment" attached as an exhibit to the Buyout Agreement, which would assign ATCA's rights and obligations under the office building lease to Vascular Solutions once approved by the landlord.

In addition to the substantive provisions addressing the SDNA Parties' withdrawal from the joint venture in return for the cash payment, the Buyout Agreement contained an "entire agreement" clause and an arbitration clause. The "entire agreement" clause provided:

> This Agreement and any Exhibits and Schedules hereto contain the entire agreement of the Parties with respect to the subject matter hereof and supersede all prior written and oral agreements, negotiations, commitments, writings, and understandings between the Parties with respect to the subject matter contained herein. It is agreed that there are no collateral agreements or representations, written or oral, related to the

[ambulatory surgery center joint venture] which are not contained in this Agreement.

The arbitration clause provided in part:

> Any controversy or claim arising out or relating to this Agreement, or the breach thereof, will be settled by arbitration administered by the American Arbitration Association under its Commercial Arbitration Rules, and judgment on the award rendered by the arbitrator(s) may be entered in any court having jurisdiction thereof.

Lastly, the Buyout Agreement included a provision specifying when it would become binding on the parties. The provision stated that the Agreement would "become effective following execution of the Agreement by all of the Parties" in counterparts and/or by facsimile, by PDF exchange via email, or by electronic signature.

The EHI Parties signed the Buyout Agreement and subsequently delivered the signed Agreement to the SDNA Parties by email in PDF format on June 15, 2015. In the email, counsel for the EHI Parties stated, "We consider the documents to be held in escrow until they are fully executed by all parties." Two days later, on June 17, 2015, the SDNA Parties returned the fully executed Buyout Agreement to the EHI Parties by email in PDF format.

*The Proposed Lease Amendment.* Before execution of the Buyout Agreement, a dispute had arisen between the landlord and ATCA over the payment of certain costs and other issues related to the office building lease. The landlord sought to settle the dispute with ATCA, and the landlord ultimately proposed an amendment to the office building lease that, among other things, would have extended the term of the lease from 5 years to 10 years (the "Proposed Lease Amendment").

Following execution of the Buyout Agreement, the EHI Parties asked the landlord to approve and sign the Lease Assignment attached as an exhibit to the Buyout Agreement to effectuate the assignment of the office building lease from ATCA to Vascular Solutions. However, the landlord indicated that its approval of the Lease Assignment was contingent on ATCA first executing the Proposed Lease Amendment.

The EHI Parties requested that ATCA sign the Proposed Lease Amendment as requested by the landlord, but ATCA ultimately declined to do so because it did not want to risk bearing any potential legal obligation for an extended lease term. Because ATCA declined to sign the Proposed Lease Amendment, the landlord refused to approve the Lease Assignment. In the absence of a valid and enforceable

6

Lease Assignment, the landlord was unwilling to provide access to the office building to any party other than ATCA, including the EHI Parties.

*Procedural History.* Because ATCA refused to sign the Proposed Lease Amendment and the landlord refused to sign the Lease Assignment, the EHI Parties refused to make any cash payments to the SDNA Parties under the terms of the Buyout Agreement. In response, the SDNA Parties filed a claim for arbitration with the American Arbitration Association under its Commercial Arbitration Rules, alleging that the EHI Parties had breached their payment obligations under the Buyout Agreement.

After the SDNA Parties filed their arbitration claim, the EHI Parties initiated the present action against them for declaratory relief in the Superior Court of Fulton County, seeking a declaration that the Buyout Agreement, including the payment terms and the arbitration clause, was invalid and unenforceable because the parties had not mutually assented to all of the essential contractual terms. The EHI Parties sought a temporary restraining order and permanent stay of the arbitration on the same basis.

The trial court temporarily stayed the arbitration with the consent of the parties and entered a case management order. The SDNA Parties thereafter filed an answer

7

that included the affirmative defense that the EHI Parties' claims were barred by the arbitration clause in the Buyout Agreement. The SDNA Parties also asserted several counterclaims that went to the merits of the parties' underlying dispute over the joint venture, including counterclaims for unjust enrichment and promissory estoppel, in the event that the trial court "determine[d] that the fully executed . . . Buyout Agreement [was] not enforceable."

The parties proceeded with discovery. The SDNA Parties subsequently filed a motion for summary judgment,[2] arguing that the parties had mutually assented to all essential terms of the Buyout Agreement by signing it; that the Agreement was unambiguous and constituted a complete and final expression of the parties' intent to settle all matters relating to their joint venture; and that parol evidence was inadmissible to change the unambiguous terms of the Agreement. Based on these

---

[2] Although the parties and the trial court characterized the SDNA Parties' motion seeking enforcement of the arbitration clause as a motion for summary judgment, the motion is properly considered a matter of abatement that did not go to the substantive merits of the action and thus is more accurately characterized as a motion to dismiss. See *Helms v. Franklin Builders*, 305 Ga. App. 863, 865, n.6 (700 SE2d 609) (2010). And because the motion to dismiss concerned a matter of abatement, the trial court's consideration of matters outside the pleadings to determine whether the arbitration clause was valid and enforceable did not convert the motion to dismiss into a motion for summary judgment. See *Odion v. Avesis*, 327 Ga. App. 443, 446 (3) (b) (759 SE2d 538) (2014).

8

arguments, the SDNA Parties asserted that the Buyout Agreement was valid and enforceable as a matter of law, that the temporary stay should be lifted, and the case should be ordered to arbitration.

The EHI Parties opposed the motion, arguing that the Buyout Agreement, including the arbitration clause, was invalid and unenforceable for lack of mutual assent to all of the essential contractual terms. According to the EHI Parties, the parties had never reached agreement as to whether the EHI Parties' payment and other obligations under the Buyout Agreement were conditioned on ATCA signing the Proposed Lease Amendment and the landlord approving the Lease Assignment. Alternatively, the EHI Parties argued that the Buyout Agreement was unenforceable on the ground of mutual mistake because the parties had mistakenly believed, when they entered into the Agreement, that the office building lease was valid and could be assigned to Vascular Solutions.

After a hearing where the parties presented oral argument, the trial court concluded that the arbitration clause was enforceable as a matter of law and granted the SDNA Parties' motion, lifted the temporary stay, and ordered the parties to arbitration. The SDNA Parties' counterclaims were voluntarily dismissed without prejudice, and the trial court stated that its order in favor of the SDNA Parties was a

9

final judgment and directed that the clerk of court close the case on the docket. This direct appeal by the EHI Parties followed.[3]

1. The EHI Parties contend that the trial court erred in ordering the case to arbitration because the Buyout Agreement containing the arbitration clause was unenforceable for lack of mutual assent of the parties to all of the essential contractual terms. According to the EHI Parties, the parties never reached agreement regarding whether the EHI Parties' obligations under the Buyout Agreement were conditioned on ATCA executing the Proposed Lease Amendment in connection with

---

[3] An order compelling arbitration generally is interlocutory in nature and must be appealed through our interlocutory application procedures. See *Goshayeshi v. Mehrabian*, 232 Ga. App. 81, 82 (501 SE2d 265) (1998). But, here, the trial court's order did not merely stay the judicial proceedings pending arbitration, leaving the case still pending below; instead, the trial court entered a final order in favor of the SDNA Parties and dismissed the entire case. The present appeal is thus controlled by our decision in *Torres v. Piedmont Builders*, 300 Ga. App. 872, 872 (1) (686 SE2d 464) (2009), where we held that the appeal of an order compelling arbitration was from a final judgment directly appealable under OCGA § 5-6-34 (a) (1) because the trial court's arbitration order "dismiss[ed] the original action in its entirety, and the case [was] no longer pending in the superior court."

the Lease Assignment and on the landlord approving the Lease Assignment.[4] We are unpersuaded.

"[T]he validity of an arbitration agreement is generally governed by state law principles of contract formation." (Punctuation and footnote omitted.) *Perry Golf Course Dev., LLC*, 337 Ga. App. at 528 (1). To form a valid contract under Georgia law, "there must be parties able to contract, a consideration moving to the contract, the assent of the parties to the terms of the contract, and a subject matter upon which the contract can operate." OCGA § 13-3-1. Thus, unless and until there is the mutual assent of the parties to all essential terms, there is no complete and enforceable contract. *TranSouth Financial Corp. v. Rooks*, 269 Ga. App. 321, 323 (1) (604 SE2d 562) (2004). See *Cox Broadcasting Corp. v. Natl. Collegiate Athletic Assn.*, 250 Ga. 391, 395 (297 SE2d 733) (1982) ("It is well settled that an agreement between two parties will occur only when the minds of the parties meet at the same time, upon the

---

[4] In other words, the EHI Parties argue that the parties never agreed whether ATCA's execution of the Proposed Lease Amendment and the landlord's approval of the Lease Assignment would serve as condition precedents to the EHI Parties' contractual obligations under the Buyout Agreement. See, e.g., OCGA § 13-3-4 ("A condition precedent must be performed before the contract becomes absolute and obligatory upon the other party."); *L. Gregg Ivey, Inc. v. Land*, 148 Ga. App. 667, 669 (3) (252 SE2d 88) (1979) ("When the existence of a debt is conditional on the happening of some event, payment cannot be enforced until the event happens[.]") (citation and punctuation omitted).

11

same subject-matter, and in the same sense."). And if the contract is unenforceable for lack of mutual assent, an arbitration clause contained within the contract is likewise unenforceable. *TranSouth Financial Corp.*, 269 Ga. App. at 324 (1).

"In determining if parties had the mutual assent or meeting of the minds necessary to reach agreement, courts apply an objective theory of intent whereby one party's intention is deemed to be that meaning a reasonable person in the position of the other contracting party would ascribe to the first party's manifestations of assent." (Citations and punctuation omitted.) *Hart v. Hart*, 297 Ga. 709, 711 (777 SE2d 431) (2015). "In some branches of the law, most notably in the criminal law, a person's subjective or secret intent is important. In the formation of contracts, however, it was long ago settled that secret, subjective intent is immaterial, so that mutual assent is to be judged only by overt acts and words rather than by the hidden, subjective or secret intention of the parties." 1 Williston on Contracts § 4:1 (4th ed. 2016).

Guided by these principles of contract formation, we conclude that the uncontroverted evidence showed that the parties had the requisite meeting of the minds necessary to reach agreement in this case. As explained below, the parties mutually assented to the Buyout Agreement through their signatures, and the Buyout Agreement specifically addressed the parties' respective obligations in connection

12

with the Lease Assignment and the consequences that would follow if the Lease Assignment was never finalized with the approval of the landlord. Hence, the fully executed Buyout Agreement reflects that the parties did reach a meeting of the minds regarding all essential matters relating to the Lease Assignment.

As an initial matter, as previously noted, the Buyout Agreement specified that it would "become effective following execution of the Agreement by all of the parties," and it is undisputed that the Agreement was signed by all the contracting parties in this case. "The affixing of their signatures to the instrument by the parties shows their mutual assent to its terms and provisions." *Russell v. Smith*, 77 Ga. App. 70, 72 (47 SE2d 772) (1948). See *Ayer v. Norfolk Timber Investment, LLC*, 291 Ga. App. 409, 411-412 (1) (662 SE2d 221) (2008) (noting that "any writing . . . in which the party charged admits, over his signature, all of the terms of the contract insisted upon by the opposite party, is sufficient" to prove his assent to the contractual terms) (citation, punctuation, and footnote omitted). The parties' signatures on the Buyout Agreement therefore reflected that they mutually assented to all of its terms.

Furthermore, the unambiguous language of the fully executed Buyout Agreement reflects that the parties intended for it to be a complete and final expression of their agreement to settle all matters relating to their joint venture,

13

including a resolution of all issues between them that pertained to the Lease Assignment. As noted above, the Lease Assignment, which would assign the office building lease from ATCA to Vascular Solutions once approved by the landlord, was executed by ATCA and attached as Exhibit E to the Buyout Agreement. The Lease Assignment contained a blank signature line for the landlord, and the Buyout Agreement also contained the following assignment provision:

> Assignment of Lease. Immediately upon execution of this Agreement, the EHI Parties *will use their maximum/best efforts* to have the [landlord] execute EXHIBIT E, which assigns the October 1, 2012, "Office Lease Agreement" (*as amended, if at all*) between ATCA and the Landlord (the "Lease") to [Vascular Solutions], and removes ATCA as tenant from the Lease. *Any proposed landlord changes to Exhibit E must be reviewed and approved by the SDNA Parties, which shall not be unreasonably withheld.*

> *Regardless of whether or not EXHIBIT E is actually executed by the Landlord,* the EHI Parties and [Vascular Solutions] agree that they are wholly responsible for all past, present, and future operations, financing, debts, liens, liability for, contracting with respect to, payments, covenants, obligations, and restrictions related to the Lease and/or the Leased Premises (as defined in the Lease Assignment attached as EXHIBIT E).

14

(Emphasis supplied.)

This contractual language reflects that, far from being incomplete, the Buyout Agreement obligated the EHI Parties to use their best efforts to obtain the landlord's approval of the Lease Assignment, and obligated the SDNA Parties to consider and not unreasonably withhold their approval to any changes proposed by the landlord in connection with the negotiations between the EHI Parties and the landlord over the Lease Assignment. The Buyout Agreement further contemplated that the original office lease between the landlord and ATCA might be amended as part of the Lease Assignment. Additionally, the Buyout Agreement indicated that the landlord might never approve the Lease Assignment and that any risk in that regard would be borne by the EHI Parties, who would continue to have binding contractual obligations even if the landlord's approval was not obtained. The plain language of the Buyout Agreement therefore shows that there was a meeting of the minds between the parties regarding all matters related to the Lease Assignment. This is particularly true in light of the "entire agreement" clause, which ruled out any "collateral agreements or representations, written or oral."

The EHI Parties, however, point to parol evidence that they contend shows that there was never any meeting of the minds as to whether their contractual obligations

15

under the Buyout Agreement would be conditioned on ATCA executing the Proposed Lease Amendment and the landlord approving the Lease Assignment. According to the EHI Parties, email correspondence between the parties' attorneys shows that, although the SDNA Parties took the position that the Buyout Agreement was final and complete upon being executed by the parties, the EHI Parties repeatedly responded that the Buyout Agreement would not be final and binding until ATCA had signed the Proposed Lease Amendment and the landlord had approved the Lease Assignment. In reply to the EHI Parties' argument, the SDNA Parties contend that the EHI Parties cannot rely on parol evidence to contradict the plain and unambiguous language of the Buyout Agreement regarding all matters related to the Lease Assignment, especially in light of the "entire agreement" clause contained in the Buyout Agreement.

The EHI Parties are correct that they can rely upon parol evidence in the context of their claim of lack of mutual assent to the contract. "Although parol evidence cannot be used to contradict or vary the terms of a valid written agreement, parol evidence may be used to show no valid agreement ever went into existence." *Moreno v. Smith*, __ Ga. __ (1) (788 SE2d 349, 352) (2016), quoting *BellSouth Advertising & Publishing Corp. v. McCollum*, 209 Ga. App. 441, 444 (2) (433 SE2d

16

437) (1993). See *Cox Broadcasting Corp.*, 250 Ga. at 395. As our Supreme Court has explained, "the circumstances surrounding the making of the contract, such as correspondence and discussions, are relevant in deciding if there was a mutual assent to an agreement, and courts are free to consider such extrinsic evidence." *Hart*, 297 Ga. at 711, quoting *Frickey v. Jones*, 280 Ga. 573, 575 (630 SE2d 374) (2006).

> Therefore, even though a writing purports to be a complete integration, evidence of negotiations is admissible to show that no enforceable agreement was reached. As Learned Hand reminded, "whatever the formal documentary evidence, the parties to a legal transaction may always show that they understood a purported contract not to bind them."

(Footnotes omitted.) E. Allan Farnsworth, Contracts § 7.4, at 439-440 (3d ed. 1999). See *In re H. Hicks & Son, Inc.*, 82 F2d 277, 279 (2d Cir. 1936) (Hand, J.).

The EHI Parties thus could rely on parol evidence in an effort to show that they conditioned their acceptance of the Buyout Agreement on ATCA executing the Proposed Lease Amendment and on the landlord approving Lease Assignment, and that the SDNA Parties never accepted those conditions, such that there was never any meeting of the minds between the parties. See generally *20/20 Vision Center v. Hudgens*, 256 Ga. 129, 133 (1) (345 SE2d 330) (1986) ("An absolute acceptance of

17

a proposal, coupled with a condition, will not be a complete contract[] because there does not exist the requisite mutual assent to the same thing in the same sense. Both parties must assent to the same thing, in order to make a binding contract between them.") (citations and punctuation omitted).

The email correspondence relied upon by the EHI Parties as parol evidence, however, do not show a lack of mutual assent. Notably, there is no evidence that the EHI Parties ever communicated to the SDNA Parties, *prior to or at the time of* the execution of the Buyout Agreement, that they considered their acceptance of the Buyout Agreement to be conditioned on ATCA executing the Proposed Lease Amendment and the landlord approving the Lease Assignment. Rather, the relevant email correspondence relied upon by the EHI Parties were sent *after* the Buyout Agreement had been signed by all of the parties and had become effective under its express terms, with the parties disagreeing at that point over whether the Buyout Agreement had already become binding and enforceable.

Given this record,

> [the EHI Parties'] objective manifestation of intent was shown through the express language of the [Buyout Agreement], and there is no evidence that the [SDNA Parties] were aware of the meaning the [EHI Parties] ascribed to the [Buyout Agreement at the time it was executed].

18

It was long ago settled, that in the making of contracts secret intent was immaterial, only overt acts being considered in determining whether or not the parties to an agreement had agreed to the same thing in the same sense.

(Punctuation and footnote omitted.) *Greenwald v. Kersh*, 275 Ga. App. 724, 727 (621 SE2d 465) (2005). The EHI Parties' email correspondence merely show that the parties began "to disagree about the interpretation of the contract language after the contract ha[d] been executed," which is insufficient, without more, to show a lack of mutual assent when the contract was formed. *Cox Broadcasting Corp.*, 250 Ga. at 395. Consequently, the EHI Parties' reliance upon the email correspondence that occurred after execution of the Agreement to show a lack of mutual assent is misplaced.[5] Compare *Moreno*, 788 SE2d at 351-352 (1) (parol evidence of the

---

[5] The EHI Parties also cite to the deposition testimony of the SDNA Parties' principals in an effort to show a lack of mutual assent regarding issues related to the Lease Assignment. But the deposition testimony does not show that the EHI Parties ever communicated to the SDNA Parties that their acceptance of the Buyout Agreement would be *conditioned* on ATCA executing the Proposed Lease Amendment and the landlord signing the Lease Assignment. Rather, the deposition testimony simply reflects more generally that the SDNA Parties knew that the EHI Parties' ultimate goal was to obtain an assignment of the office building lease from ATCA to Vascular Solutions with the approval of the landlord and that, without the assignment becoming finalized, the Buyout Agreement would be of little practical value to the EHI Parties.

parties' conduct after execution of their purported contract, *combined with* affidavit evidence of the parties' statements made at the time the purported contract was signed, provided evidence of lack of mutual assent).

For these combined reasons, the uncontroverted evidence showed that the parties mutually assented to the Buyout Agreement, which was a full and complete expression of the parties' intent regarding the Lease Assignment and other matters related to the SDNA Parties' withdrawal from the joint venture. And because there was mutual assent to all the terms of the Buyout Agreement, the parties mutually assented to the arbitration clause contained within the Agreement as a matter of law. Compare *TranSouth Financial Corp.*, 269 Ga. App. at 324 (1) (absent evidence that parties mutually assented to all the essential contractual terms, the parties' alleged agreement, including the arbitration clause contained within it, was unenforceable).

2. Alternatively, the EHI Parties contend that the trial court erred in ordering the case to arbitration because the Buyout Agreement containing the arbitration clause was unenforceable on the ground of mutual mistake.[6] The EHI Parties note that when the parties entered into the Buyout Agreement, they believed that the office

---

[6] The parties agree on appeal that the issue of mutual mistake was a matter of contract formation for the trial court rather than the arbitrator to decide.

building lease between the landlord and ATCA was valid and could be assigned to Vascular Solutions as part of their settlement of all matters related to the joint venture. The EHI Parties emphasize, however, that during discovery, the SDNA Parties for the first time took the position that the lease was invalid from its inception on several grounds. If the lease was in fact invalid from its inception, the EHI Parties argue that the Buyout Agreement is unenforceable because both parties at the time of contracting had a mistaken belief regarding a basic assumption on which the Buyout Agreement was made, namely, that the lease was valid and subject to assignment. Again, we are unpersuaded.

Pretermitting whether the office building lease was invalid from its inception, we conclude that the doctrine of mutual mistake would not render the Buyout Agreement unenforceable in light of the record in this case. "An honest mistake of the law as to the effect of an instrument on the part of both contracting parties, when the mistake operates as a gross injustice to one and gives an unconscionable advantage to the other, may be relieved in equity." OCGA § 23-2-22. "The power to relieve mistakes shall be exercised with caution; to justify it, the evidence shall be clear, unequivocal, and decisive as to the mistake." OCGA § 23-2-21 (c). Furthermore, to prove mutual mistake, "it must be shown that the alleged mistake resulted in a

21

contract which fails to express accurately the intention of the parties." *CS-Lakeview at Gwinnett v. Simon Property Group*, 283 Ga. 426, 429 (659 SE2d 359) (2008).

Here, the assignment provision of the Buyout Agreement, quoted supra in Division 1, specifically referred to the possibility of an "amended" office building lease and to "proposed landlord changes" to the Lease Assignment attached to the Buyout Agreement, and the provision further stated that the EHI Parties would continue to have contractual obligations "[r]egardless of whether or not [the Lease Assignment] [was] actually executed by the Landlord." Hence, as the language of the assignment provision in the Buyout Agreement clearly reflects, the parties specifically contemplated that the original office building lease and/or the Lease Assignment might have to undergo amendment or revision before any assignment would become enforceable, that the assignment of the lease to Vascular Solutions might never occur even with the best efforts of the parties, and that any risk in that regard would be assumed by the EHI Parties.

Under these circumstances, where the parties foresaw the possible need for revisions to the original office building lease and to the Lease Assignment, understood that there was a risk that the lease would never be assigned to Vascular Solutions, and contracted over which parties would bear the risk that the assignment

22

of the lease ultimately would fail, it cannot be said that the alleged mistake regarding the lease would work a gross injustice to the EHI Parties, or would result in a contract that failed to accurately express the intentions of the parties. Consequently, the EHI Parties' argument that the arbitration clause was unenforceable because of a mutual mistake in entering the Buyout Agreement failed as a matter of law.

3. The EHI Parties further argue that the SDNA Parties waived their right to enforce the arbitration clause in the Buyout Agreement by engaging in discovery, asserting counterclaims, and moving for summary judgment. However, the EHI Parties failed to raise this specific argument in the trial court as a basis for the court not to order the case to arbitration. "We do not consider issues raised for the first time on appeal, because the trial court has not had opportunity to consider them." *Dan J. Sheehan Co. v. Ceramic Technics*, 269 Ga. App. 773, 777 (3) (605 SE2d 375) (2004). Thus, we decline to consider the EHI Parties' new argument on appeal that the SDNA Parties could not enforce the arbitration clause because of their active participation in this litigation.

In sum, the uncontroverted evidence of record showed that the parties mutually assented to all of the essential terms of the complete and binding Buyout Agreement, such that the Agreement, including the arbitration clause contained within it, was

23

valid and enforceable. Additionally, the uncontroverted evidence established that the Buyout Agreement was not rendered unenforceable on the basis of mutual mistake. The trial court's order holding that the arbitration clause in the Buyout Agreement was enforceable and ordering the case to arbitration therefore is affirmed.[7]

*Judgment affirmed. Boggs and Rickman, JJ., concur.*

---

[7] While the EHI Parties argue that the trial court did not employ the proper legal reasoning in determining whether the case was subject to arbitration, we affirm under the "right for any reason" rule to the extent there was any error, in light of our conclusions reached supra in Divisions 1-3. See *City of Gainesville v. Dodd*, 275 Ga. 834, 839 (573 SE2d 369) (2002) (courts have discretion to apply the "right for any reason" rule); *Ashburn Health Care Center v. Poole*, 286 Ga. App. 24, 27 (648 SE2d 430) (2007) (trial court's decision regarding whether to compel arbitration will be affirmed if right for any reason).