**FOURTH DIVISION**
**DILLARD, P. J.,**
**BROWN and PADGETT, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**July 22, 2024**

# In the Court of Appeals of Georgia

A24A0608. WILLIAM J. WEATHERS, II et al. v. ROBERT L. WEATHERS, JR.

DILLARD, Presiding Judge.

Robert Weathers engaged in an arbitration with two of his siblings and their accountant ("Appellants")[1] to resolve an inheritance dispute. In an interim award, the arbitrator ruled in Robert's favor on every claim and awarded him attorney fees, expenses, and interest. But in the final award, the arbitrator awarded no expenses or interest and significantly reduced the attorney fees. Surprised by the change, Robert moved for reconsideration, which the arbitrator granted. In doing so, the arbitrator speculated in a corrected final award that the errors in the initial final award may have

---

[1] The "Appellants" are William J. Weathers, II; Laura W. Brooks; and John R. Ulmer.

been a result of pain medication he took to alleviate severe back pain. But when Appellants argued that he lacked the authority to issue the corrected award under the *functus officio* doctrine,[2] the arbitrator agreed and withdrew it. Robert then filed a motion to vacate the award, which the trial court granted on several grounds. Now, Appellants contend the trial court erred in vacating the award on the independent grounds that the arbitrator (1) engaged in misconduct; (2) manifestly disregarded the law; and (3) imperfectly executed his authority. For the following reasons, we affirm.[3]

In 2018, following the death of their mother, Robert and Appellants began disputing various aspects of their respective inheritances from their parents' estates. And in an effort to resolve those disagreements and avoid protracted litigation, the

---

[2] *See Int'l Bhd. of Elec. Workers, Loc. Union 824 v. Verizon Fla., LLC*, 803 F3d 1241, 1245 (I) (11th Cir. 2015) (noting that the doctrine of *functus officio* is a "common law rule (meaning 'task performed')," which "provides that, while an arbitrator may correct clerical, typographical, or computational errors in a final award, he has no power to revisit the merits of the award after it has issued."); *see also Wells v. Wells-Wilson*, 360 Ga. App. 646, 657 (860 SE2d 185) (2021) (noting that "[w]hile our research has revealed no Georgia decision applying the functus officio doctrine in the arbitration context, federal courts have done so.").

[3] Oral argument was held in this case on April 10, 2024, and is archived on the Court's website. *See* Court of Appeals of the State of Georgia, Oral Argument, Case No. A24A0608 (Apr. 10, 2024), available at https://vimeo.com/934571718?share=copy

parties entered into a detailed settlement agreement on November 7, 2018, which included a clause requiring any future disputes to be submitted to binding arbitration. In short order, a dispute between the parties arose, they engaged in arbitration, and then, on October 26, 2020, the arbitrator issued an award in favor of Robert.

Even so, additional disputes arose rather quickly between the parties, and in December 2020, Robert sought a second arbitration with the same arbitrator—a retired federal judge. On January 19, 2023, following a two-day hearing, the arbitrator issued an Interim Award, ruling in favor of Robert on all of his claims. In doing so, the arbitrator determined that Robert was entitled to attorney fees and expenses related to the arbitration, and directed him to submit evidence of such fees and expenses to be included in the final award. The arbitrator also ordered Appellants to pay back into the estate's escrow the significant amount of funds they had taken out to pay for their various personal litigation expenses, plus 6.5 percent interest; and he further ordered them to provide a detailed report of all such expenditures.

Robert submitted evidence of his attorney fees and expenses as directed. Then, on March 2, 2023, the arbitrator issued a Final Award, in which he affirmed the earlier ruling in favor of Robert as to his claims, and in doing so indicated that the Final

Award incorporated the Interim Award unless noted otherwise. But the arbitrator awarded significantly less in attorney fees than Robert sought, and awarded no expenses or interest, explaining:

> After review of the submissions I have undertaken what I consider to be, on the whole, a fair and appropriate award of damages to [Robert]. In doing so, I have reduced gross attorney's fees sought by [Robert] to be paid by [Appellants] from $524,936 to $78,740 (roughly 15% of the attorney's fees sought). In doing so I have also not awarded any claims for interest on the amounts that I have agreed should be paid by [Appellants] because I deem the attorney's fees to be unreasonable and unnecessarily prolonged the resolution of the dispute.

And although the award briefly noted Robert's breach-of-the-escrow claim, it omitted the details previously included in the Interim Award. The Final Award further concluded: "This Final Award is in full settlement of all claims and any counterclaims submitted in this arbitration. To the extent that any claim is not specifically mentioned herein, it is DENIED."

Understandably perplexed by the volte-face between the Interim and Final awards on the issue of attorney fees and expenses, Robert moved for the arbitrator to reconsider those awards, as well as other issues. And on March 30, 2023, the arbitrator

4

agreed, issuing what he titled a "Final Award (As Corrected)," in which he admitted that his failure to award significant attorney fees and expenses to Robert was in error. Specifically, the arbitrator noted that his characterization of Robert's attorney fees as "unreasonable" and assertion that they "unnecessarily prolonged the resolution of the dispute" were both incorrect, adding a footnote which read as follows:

> I extend my sincerest apologies to the parties and their counsel for my errors in the challenged Final Award, given its inconsistent awards and findings with the Interim Award, that upon comprehensive review are now clear to me. The only reason that I can fathom is that in a rush to finalize this dispute I was suffering with severe back pain and taking potent pain relief medicine that apparently precipitated my errors in crafting the challenged Final Award.

In stark contrast to the Final Award, the arbitrator awarded Robert $466,036 in attorney fees.

Shortly thereafter, Appellants moved the arbitrator to withdraw the "Final Award (As Corrected)," arguing he lacked the authority to revise the previous Final Award. The arbitrator was persuaded by this argument, and—less than two weeks later—he issued a decision withdrawing the "Final Award (As Corrected)" and denied Robert's request for a correction of the Final Award. With the Final Award

and its significant reduction in attorney fees now reinstated, Robert filed a motion to vacate the arbitration award in the Superior Court of Gwinnett County, under OCGA § 9-9-13 (b), arguing the award was invalid because the arbitrator engaged in misconduct, manifestly disregarded the law, and imperfectly executed his authority. The trial court held a hearing on the matter and vacated the award on all of these grounds. This appeal follows.

The Arbitration Code in Georgia was "designed to preserve and ensure the efficacy and expediency of arbitration awards."[4] Toward that end, the primary advantage of arbitration is the "expeditious and final resolution of disputes by means that circumvent the time and expense associated with civil litigation."[5] But arbitration is "a unique procedure that exists in Georgia due to legislative fiat, and it is conducted in accordance with the rules established by the legislature."[6] Importantly, under the

---

[4] *Adventure Motorsports Reinsurance, Ltd. v. Interstate Nat'l Dealer Servs.*, 313 Ga. 19, 25 (1) (867 SE2d 115) (2021) (punctuation omitted); *accord ABCO Builders, Inc. v. Progressive Plumbing, Inc.*, 282 Ga. 308, 309 (647 SE2d 574) (2007).

[5] *Adventure Motorsports Reinsurance*, 313 Ga. at 25 (1) (punctuation omitted); *accord Greene v. Hundley*, 266 Ga. 592, 597 (3) (468 SE2d 350) (1996).

[6] *Adventure Motorsports Reinsurance*, 313 Ga. at 25 (1) (punctuation omitted); *accord Greene*, 266 Ga. at 597 (3).

Arbitration Code, trial courts are "severely limited in vacating an arbitration award so as not to frustrate the legislative purpose [as codified] of avoiding litigation by resort to arbitration."[7] And on appeal of a trial court's order to vacate an arbitration award, we "review questions of law de novo and review the trial court's findings of fact for clear error."[8]

Turning to the specific statute at issue, OCGA § 9-9-13 (b) sets out the narrow circumstances under which a superior court can vacate an arbitration award, providing:

> The [arbitration] award shall be vacated . . . if the court finds that the rights of that party were prejudiced by:
>
> (1) Corruption, fraud, or misconduct in procuring the award;

---

[7] *Adventure Motorsports Reinsurance*, 313 Ga. at 25 (1) (punctuation omitted); *accord Brookfield Country Club, Inc. v. St. James-Brookfield, LLC*, 287 Ga. 408, 411 (1) (696 SE2d 663) (2010); *see Magnum Contracting, LLC v. Century Communities of Ga., LLC*, 362 Ga. App. 755, 759 (A) (870 SE2d 75) (2022) ("The scope of a court's review of an arbitration award is among the narrowest known to the law." (punctuation omitted)).

[8] *Magnum Contracting*, 362 Ga. App. at 758-59 (A) (punctuation omitted); *accord Wells*, 360 Ga. App. at 647-48; *see Adventure Motorsports Reinsurance*, 313 Ga. at 25 (1) ("In reviewing a trial court's order confirming or vacating an arbitration award, the appellate court reviews de novo the trial court's resolution of questions of law.").

(2) Partiality of an arbitrator appointed as a neutral;

(3) An overstepping by the arbitrators of their authority or such imperfect execution of it that a final and definite award upon the subject matter submitted was not made;

(4) A failure to follow the procedure of this part, unless the party applying to vacate the award continued with the arbitration with notice of this failure and without objection; or

(5) The arbitrator's manifest disregard of the law.

Significantly, these five statutory bases are the "exclusive grounds for vacating an arbitration award."[9] Indeed, unless one of the statutory grounds for vacating an arbitration award—as delineated in OCGA § 9-9-13 (b)—is "found to exist, a trial court in reviewing an award is bound to confirm it."[10] With these guiding principles in mind, we turn now to the Appellants' claims of error.

---

[9] *King v. King*, 354 Ga. App. 19, 23 (2) (840 SE2d 108) (2020); *see ABCO Builders*, 282 Ga. at 309 (explaining that judicial review of an arbitration award is strictly limited to five statutory grounds set forth in OCGA § 9-9-13 (b)); *Lang Enter. Ltd. Co. v. Alcue Properties & Interiors, Inc.*, 368 Ga. App. 88, 89 (1) (889 SE2d 210) (2023) (same).

[10] *Adventure Motorsports Reinsurance*, 313 Ga. at 26 (1) (punctuation omitted); *accord Magnum Contracting*, 362 Ga. App. at 759 (A).

1. Appellants contend, among other things, that the trial court erred in vacating the Final Award because the arbitrator imperfectly executed his authority such that a final and definite award on the subject matter was not made. We disagree.

An arbitrator imperfectly executes his or her authority under OCGA § 9-9-13 (b) (3) when "the record shows a significant failure to fully and clearly address the issues presented."[11] For instance, an arbitrator may fail to make a final and definite award if he or she "declines to consider a claim or counterclaim that was submitted to it."[12] And whether such a failure occurred "turns on what the parties' arbitration agreement required of the arbitrator."[13] Indeed, an arbitration award should be "consistent with terms of the underlying agreement and reflect the essence of the contract."[14] So, while an arbitrator has some latitude in fashioning remedies, he is "not free to ignore the express terms of a valid and enforceable contract."[15]

---

[11] *Magnum Contracting*, 362 Ga. App. at 759 (A) (punctuation omitted); *accord King*, 354 Ga. App. at 25 (2) (b).

[12] *Magnum Contracting*, 362 Ga. App. at 759 (A) (punctuation omitted).

[13] *Id.* (punctuation omitted); *accord King*, 354 Ga. App. at 25 (2) (b).

[14] *Magnum Contracting*, 362 Ga. App. at 759 (A) (punctuation omitted);

[15] *Id.* at 759-60 (A) (punctuation omitted).

Here, the settlement agreement forming the bases of Robert's arbitration claims provided for an escrow account "to cover contingent liabilities of the respective Estates" and directed any disputes regarding the escrow funds be submitted to the arbitrator. And as noted *supra*, Robert claimed—and the arbitrator agreed—that Appellants breached the escrow agreement by, *inter alia*, improperly using its funds to pay their personal legal expenses. Specifically, in the Interim Award, the arbitrator found Appellants' misuse of escrow funds amounted to both a breach of the settlement agreement and of their fiduciary duties. In light of these breaches, the arbitrator ordered Appellants to conduct an accounting and return all such misused funds taken from the escrow account (with interest), and further held that he would "retain jurisdiction with respect to the Escrow through its proper final distribution." But in the Final Award, despite indicating that he was incorporating the Interim Award with certain corrections and modifications related to damages and attorney fees, the arbitrator made no explicit mention of the escrow account or the status of the accounting and repayment of funds. And adding further confusion, the arbitrator concluded in the Final Award that any claim not "specifically mentioned" was denied, raising the issue of whether explicitly incorporating the Interim Award

constituted a specific mention of its earlier resolution of the escrow claim. Given these circumstances, the arbitrator's Final Award failed to fully resolve a significant dispute regarding the escrow account as required by the settlement agreement. As a result, the trial court was authorized to conclude there was such an imperfect execution of the arbitrator's authority that a final and definite award was not made and, thus, vacate the Final Award on this ground.[16]

2. In two additional claims, Appellants contend the trial court erred in vacating the award because the arbitrator engaged in misconduct and manifestly disregarded the law. But given our holding in Division 1, *supra*, that the vacatur was authorized because the arbitrator imperfectly executed his authority, we need not address

---

[16] *See King*, 354 Ga. App. at 25-26 (2) (b) (holding that because arbitrator in divorce case failed to issue an award with findings of fact and conclusions of law, as explicitly required by the parties' contract, trial court was authorized to conclude that there was such an imperfect execution of the arbitrator's authority, such that a final and definite award was not made, and to vacate award on that ground); *Hansen & Hansen Enters. v. SCSJ Enters.*, 299 Ga. App. 469, 473-74 (2) (b) (682 SE2d 652) (2009) (explaining trial court did not err in vacating the award on the ground that there was such an imperfect execution of the arbitrator's authority that a final award was not made in light of fact arbitrator did not consider appellant's counterclaim as required by agreement).

whether the trial court also erred in determining the arbitrator engaged in misconduct and manifestly disregarded the law.[17]

Furthermore, our limited holding in this regard—affirming only on the ground discussed in Division 1—in no way impacts the trial court's vacatur of the Final Award in its entirety. To the contrary, if a trial court vacates an arbitration award, it "may do so only in its entirety."[18] And under the relevant statute, the trial court's direction to the arbitrator as to the issues to be addressed on rehearing is similarly not confined to the escrow issue.[19]

---

[17] *See King*, 354 Ga. App. at 29 (2) (c), n.8 (noting that because vacatur was authorized based on the arbitrator imperfectly executing his authority, this Court was not required to address whether superior court erred in further determining arbitrator erred in other respects); *see generally Extremity Healthcare v. Access to Care Am.*, 339 Ga. App. 246, 258 (3), n.7 (793 SE2d 529) (2016) (explaining superior court's arbitration ruling will be affirmed if right for any reason).

[18] *SCSJ Enters. v. Hansen & Hansen Enters.*, 306 Ga. App. 188, 189 (702 SE2d 12) (2010).

[19] *See* OCGA § 9-9-13 (e) ("Upon vacating an award, the court may order a rehearing and determination *of all or any of the issues* either before the same arbitrators or before new arbitrators appointed as provided by [the statute]." (emphasis supplied)); *Brookfield Country Club*, 287 Ga. at 410-11 (1) (emphasizing the importance of sustaining the integrity of the arbitration process and "severely limit[ing]" the power of reviewing courts so as to not "frustrate the expeditious and final resolution of disputes by means that circumvent the time and expense associated with civil litigation" (punctuation omitted)).

For all these reasons, the trial court's judgment is affirmed.

*Judgment affirmed. Brown and Padgett, JJ., concur.*